In re the Matter of Douglas Allen
CROSBY, petitioner,
Respondent,

v.

Dawn Rachelle CROSBY, Appellant.

In re the Marriage of Douglas Allen
Crosby, petitioner, Respondent,

v.

Dawn Rachelle Crosby, Appellant.

No. C0–98–339.

Court of Appeals of Minnesota.

Dec. 15, 1998.

Review Denied Feb. 18, 1999.

Thomas T. Smith, Smith Law Firm P.A., Bemidji, MN (for respondent).

Thomas L. D'Albani, James W. Haskell, Cann, Haskell, D'Albani, Schueppert, Hazelton & Rodgers, P.A., Bemidji, MN (for appellant).

Loisanne Kopp, Bemidji, MN (guardian ad litem).

Considered and decided by SHUMAKER, Presiding Judge, and CRIPPEN and KLAPHAKE, Judges.

## OPINION

CRIPPEN, Judge.

Pointing to evidence of conflict between the parties, appellant, who was named as sole legal custodian of the parties' two children, challenges the trial court's determination that respondent should provide nearly one-half of the physical care of the children. We affirm the trial court's custody determination. We also find no trial-court error on additional issues raised by appellant.

### FACTS

In the December 1997 judgment that ended the marriage, sole legal custody of the parties' two children was placed with their mother, appellant Dawn Crosby. Appellant was also named primary physical custodian, but the court decided respondent Douglas Crosby's visitation contacts would involve approximately one-half of the physical care of the children. This division of physical custody is almost the same as that in a temporary order issued one year earlier.

The guardian ad litem testified that joint legal custody of the children "probably isn't possible." She based her conclusion on her observation that the parties have an inability to cooperate in or communicate about the rearing of their children. Despite not recommending joint legal custody, the guardian testified that respondent was doing a fine job "insofar as the parenting is concerned" and that he had done a "nice job with the children." The guardian recommended that the children spend substantial time with each parent.

The trial court found that both parties had significantly provided for the needs of the children and were capable of providing adequate care for the children. Moreover, the court found respondent had a disposition better suited to encourage and permit contact by the other parent. But the court felt joint legal custody would be inappropriate because the parties have difficulty communicating and resolving disputes and these disputes had erupted in front of the children. Given these competing concerns, the judge found that "[a] structured division of physical custody will give the children substantial time with each parent and the opportunity to experience the best each parent has to offer."

## ISSUES

Did the trial court err in deciding that respondent should have one-half of the physical care of the children?

Did the court err in its classification and division of marital and non-marital property, or in other decisions?

## ANALYSIS

### 1. Physical care of the children

■ A trial court has broad discretion to provide for the custody of the parties' children. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). The trial court has extensive discretion in deciding visitation questions and will not be reversed absent an abuse of discretion. *Manthei v. Manthei*, 268 N.W.2d 45, 45 (Minn.1978). Its underlying findings of fact will be upheld if they are not clearly erroneous. Minn. R. Civ. P. 52.01.

■ Appellant contends that the grant of extensive visitation to respondent was tantamount to joint physical custody and inappropriate given these circumstances in which the court determined that sole legal custody should be with the mother. Before awarding joint legal custody or joint physical custody, a trial court judge must evaluate, among other things, the cooperation ability of parents, their dispute resolution methods, and their willingness to use these methods. Minn.Stat. § 518.17, subd. 2 (1996).[1] In this case, the trial court found that joint legal custody would be inappropriate given the difficulty the parties have in communicating and in resolving disputes. The unhappy marital history, the allegations and counter-allegations of abuse, and the guardian ad litem's testimony all support the determination that joint legal custody would be inappropriate given the parties' communication difficulties.

■ Despite this determination, the court could properly observe that problems in communicating with each other would not impair the ability of appellant and respondent to share joint physical custody of the children if the custody arrangement were structured. The court could reasonably expect that the history of disputes between the parties should not contradict the court's determination that they could successfully comply with

---

1. Minn.Stat. § 518.17, subd. 2 (Supp.1997), provides:

 In addition to the factors listed in subdivision 1, where either joint legal or joint physical custody is contemplated or sought, the court shall consider the following relevant factors:
 (a) The ability of parents to cooperate in the rearing of their children;
 (b) Methods for resolving disputes regarding any major decision concerning the life of the child, and the parents' willingness to use those methods;
 (c) Whether it would be detrimental to the child if one parent were to have sole authority over the child's upbringing; and
 (d) Whether domestic abuse, as defined in section 518B.01, has occurred between the parents.

 Here, appellant does not dispute the adequacy or accuracy of the trial court's findings regarding the parties' inability to cooperate.

a schedule of times for exchange of physical custody in the same community. In fact, the parties shared custody on a nearly equal basis during 1997 and it is undisputed that the parties have not experienced significant difficulties in this regard. When determining whether a parent should share extensively in the physical care of children, the trial court is free to evaluate the cooperativeness of the parents differently than when deciding whether the parents could successfully act as joint legal custodians.

The trial court noted that both parents have played a large role in the children's lives and that both have been good parents. The guardian ad litem testified to this effect. Moreover, given the trial court's finding that respondent has a disposition better suited to encouraging and permitting contact by the other party, the court could rightfully refrain from limiting respondent's contacts with the children because of communication problems between the parties.

■ Appellant also disputes the sufficiency of the evidence to support the trial court's findings that "[b]oth parents have the capacity and disposition to give the children love, affection and guidance," that "both parties have positive attributes the children could benefit from and need to experience," and that respondent "has a disposition better suited to encourage and permit contact by the other parent." To support her argument, appellant points to evidence of prior angry outbursts by respondent and testimony of other witnesses about his bad behavior. In contrast, she points to evidence regarding her positive attributes as a parent. Although this recitation of facts by appellant might prompt another trier of fact to different findings, because there is sufficient contradictory evidence to reasonably support the trial court's findings, the evidence submitted by appellant does not render the trial court's findings clearly erroneous.

2. The division of marital and non-marital property; other issues.

a. Property. Neither child support nor maintenance was granted either party, but respondent received temporary maintenance during the pendency of the proceedings.

The trial court identified marital property of approximately $117,000 and unsecured marital debt of approximately $18,000. The court awarded approximately $39,000 of the marital property to respondent Douglas Crosby and $78,000 to appellant Dawn Crosby. In addition, the court identified over $170,000 in disputed property as appellant's non-marital property. However, appellant was made responsible for the $18,000 unsecured marital debt. In order to offset the discrepancy in the award of marital property, the court awarded respondent approximately $27,000 of appellant's non-marital property consisting of a rock picker, a snowmobile with trailer, and a pickup truck with plow.

■ The trial court has broad discretion regarding the division of property in marriage dissolutions and will be reversed only for a clear abuse of discretion. *Hein v. Hein*, 366 N.W.2d 646, 649 (Minn.App.1985). Appellant challenges the amount of property deemed marital property, the division of the marital property, and the award of some of her non-marital property to respondent.

Appellant was injured as a child; as a result, she receives a lifelong annuity payment of $4,048 a month. She also has other substantial non-marital assets. Unquestionably, she used her assets to provide the majority of the family budget during the marriage.

■ Appellant claims that the trial court incorrectly deemed too much property to be marital property, given her extensive financial contributions to the parties' financial well-being. To overcome the presumption that property is marital, a party must demonstrate by a preponderance of the evidence that the property is non-marital. *Wopata v. Wopata*, 498 N.W.2d 478, 484 (Minn.App. 1993). Appellant does not claim that the judge erred in naming specific items as non-marital. Instead, she argues that the bulk of their property is derived from appellant's pre-marital assets and therefore should remain non-marital. But the trial judge found that appellant regularly co-mingled non-marital and marital funds "to such an extent that deposited non-marital funds lost that character." Appellant did not adequately trace her

allegedly non-marital assets, thus failing to meet her burden of proof. The record supports the trial judge's conclusion that although appellant's "non-marital assets were the primary source of funds expended by the parties, that fact alone was insufficient to establish the non-marital character of assets acquired during the marriage."

 Appellant claims that the trial court's division of marital property was not equitable. A trial court must make a just and equitable division of marital property. Minn.Stat. § 518.58, subd. 1 (Supp.1997). An equitable division of marital property is not necessarily an equal division. *Riley v. Riley*, 369 N.W.2d 40, 43 (Minn.App.1985), *review denied* (Minn. Aug. 29, 1985). In this case, the division of marital property was unequal. Appellant received substantially more of the marital property than respondent. Even after the amount of unsecured marital debt is subtracted from her portion, she still received marital assets more than $20,000 in excess of those respondent received. Appellant has no reasonable grounds to challenge the division of marital assets.

 Appellant also contends the trial court erred in granting respondent some of appellant's non-marital property. Awards of non-marital property are left to the discretion of the trial court. *Doering v. Doering*, 385 N.W.2d 387, 391 (Minn.App.1986). A trial court may award up to one-half of a spouse's non-marital property to the other spouse if necessary to prevent unfair hardship. Minn.Stat. § 518.58, subd. 2 (1996).

 In this case, the trial court awarded respondent a pickup truck, a plow, a rock picker, a snowmobile, and a trailer that were appellant's non-marital property instead of a larger share of marital property. Due to the divorce, respondent was going to experience a substantial reduction in his standard of living. The award of the truck, the plow, and the rock picker was necessary to allow him at least to try to produce earned income. The snowmobile was part of a pair the couple owned, and it made sense to award one to

each party. Moreover, this award is justified in that appellant was responsible for some waste of marital property during the pendency of the divorce, and the trial judge tried to offset this waste when making the award to respondent. *See* Minn.Stat. § 518.58, subd. 1a (1996) (if a party dissipates marital property during the pendency of a case, the court shall put the parties in the position they would have been in but for the dissipation).

b. Domestic abuse finding. Appellant challenges the trial court's finding that there was no domestic abuse, largely as a matter collateral to the custody dispute. Appellant alleges various incidents during which respondent was physically or emotionally abusive to her or others. Respondent denies or re-characterizes these incidents and counter-charges that appellant was herself abusive. Evidence in the record provides support for both parties. Due to the conflicting evidence, neither a finding of abuse nor a finding of no abuse could be deemed clearly erroneous.

c. Restraining order. Appellant disputes the power of the court to issue a mutual restraining order. Appellant evidently relies on *Mechtel v. Mechtel*, 528 N.W.2d 916 (Minn.App.1995), in which this court held that unless the respondent in a domestic abuse action also requests a restraining order, it is error to issue a mutual restraining order.

 This case began when appellant requested an order for protection against respondent. The request was consolidated with respondent's request to initiate divorce proceedings. The trial court then issued a restraining order against respondent pursuant to Minn.Stat. § 518.131 (1996). The function of a temporary order for relief is to preserve the status quo until opportunity is afforded to decide the matter on the merits. *See Korf v. Korf*, 553 N.W.2d 706, 709 (Minn. App.1996). After both sides addressed the matter on the merits, the court found that there was no domestic abuse, but chose to place restraints on both parties.[2]

---

2. The restraints affecting appellant involve not stalking or harassing respondent, and an order to communicate only through counsel.

■ The trial court issued the mutual restraining order to enable the parties to live in the same community peacefully and to aid in the goal of parental involvement in the lives of the children. This properly occurred as part of the court's authority in divorce proceedings, having regard for protecting the safety of the parties and upholding the best interests of the children.

■ d. Maintenance. Appellant also challenges the trial court's decision not to award her a credit for the temporary maintenance she had to pay respondent. "The standard of review on appeal from a trial court's determination of a maintenance award is whether the trial court abused the wide discretion accorded to it." *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). A court may order maintenance if it finds that a spouse is unable to support him or herself adequately through employment in view of the standard of living established during the marriage. Minn.Stat. § 518.552, subd. 1(b) (1996). The maintenance issue essentially amounts to a balancing of the recipient's need against the obligor's financial condition. *See Erlandson*, 318 N.W.2d at 39–40.

■ In this case, when the parties separated and respondent left the farm, he lost the source of his income. Given the fact that the trial judge gave appellant a choice either to pay temporary maintenance or to allow respondent to stay on the farm and make a living, and she chose to make respondent leave the farm, the judge was well within his discretion to make no award to undo the effects of his temporary maintenance provision. Moreover, the amount in question was relatively minimal, $500 per month for a year, and was well within appellant's ability to pay.

■ e. Tax exemptions. Appellant challenges the award of both income tax exemptions for dependent children to respondent. The allocation of the federal tax exemptions is within discretion of the trial court. *Valento v. Valento*, 385 N.W.2d 860, 863 (Minn.App.1986), *review denied* (Minn.

June 30, 1986). The relative resources of the parties justify this award. Moreover, at the time of the hearing, the exemption was of no benefit to appellant because her primary source of income, the annuity from a personal injury action, was already tax exempt. The award of both exemptions to respondent was well within the trial court's discretion.

■ f. Attorney fees. Appellant challenges the award of attorney fees to respondent. An award of attorney fees "rests almost entirely within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Jensen v. Jensen*, 409 N.W.2d 60, 63 (Minn.App.1987). A trial court shall award attorney fees when it finds that an award is necessary for a party to assert his or her rights in an action, that the payor has the financial means to pay the fees, and that the payee lacks the means to pay the fees. Minn.Stat. § 518.14, subd. 1 (1996).

■ The record makes it evident that respondent's financial resources are much less than those of appellant and that respondent is not financially able to pay for prolonged litigation. Appellant argues that respondent can liquidate assets to pay attorney fees. Although possible, this is not equitable because respondent uses the assets to make a living. *See Karg v. Karg*, 418 N.W.2d 198, 202 (Minn.App.1988) (award of attorney fees appropriate where payee would have had to liquidate part of property award to pay fees and payor had substantially higher income). Moreover, appellant has at times taken actions that increased respondent's legal costs.[3] The award of attorney fees was well within the trial court's discretion. Respondent has made a motion for attorney fees on appeal. For the same reasons determined by the trial court, he is awarded $1,500.

**DECISION**

The trial court properly considered the cooperation ability of the parents in deciding that respondent should share extensively in the physical care of his children. Moreover, the trial court acted within its discretion in

**3.** Appellant refused to sell farm assets that were to be used to pay joint debts, refused to pay these debts, and allowed respondent's insurance to lapse—all contrary to court order.

its division of marital and non-marital property and in its resolution of the other issues raised by the parties.

**Affirmed.**