*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1945**

In re the Marriage of: Helen Kernik, petitioner,
Appellant,

vs.

James Kernik,
Respondent,

Judith Murphy,
Respondent.

**Filed July 28, 2014
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Ramsey County District Court
File No. 62-FA-11-2759

Marc G. Kurzman, Kurzman Grant Law Office, Minneapolis, Minnesota (for appellant)

Melissa Julee Chawla, Gary A. Debele, Walling, Berg & Debele, P.A., Minneapolis, Minnesota (for respondent)

James John Vedder, Moss & Barnett, P.A., Minneapolis, Minnesota (for respondent Judith Murphy)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Larkin, Judge.

**UNPUBLISHED OPINION**

**LARKIN**, Judge

In this marital-dissolution case, appellant-wife challenges the district court's spousal-maintenance and property-division determinations, as well as its judgment in favor of a nonparty for attorney fees stemming from wife's discovery requests. We reverse and remand the judgment for nonparty attorney fees, but we affirm in all other respects.

## FACTS

Appellant-wife Helen Kernik and respondent-husband James Kernik were married in 1981. Wife filed for dissolution of the parties' marriage in 2012. The district court held a five-day trial, received over 200 exhibits, and heard testimony from competing experts. On April 5, 2013, the district court issued its findings of fact, conclusions of law, order for judgment, and judgment and decree. Later, the district court ordered wife to pay $6,350 in attorney fees to respondent Judith Murphy, husband's then girlfriend. The fees were incurred in connection with wife's discovery requests.

Wife moved for amended findings of fact. She also moved for increased spousal maintenance based on changed circumstances. The district court amended the judgment and decree, and wife appeals.

## DECISION

Generally, absent a motion for a new trial, an appellate court reviews substantive legal issues properly raised in and considered by the district court, whether the evidence supports the findings of fact, and whether those findings support the conclusions of law

2

and judgment. *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 664 N.W.2d 303, 311 (Minn. 2003) (stating that a new-trial motion is not a prerequisite to appellate review of substantive legal issues properly raised and considered in district court); *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976) (stating that absent a motion for new trial, appellate courts may review whether evidence supports findings of fact and whether findings support conclusions of law and judgment).

## I.

Wife challenges several of the district court's factual findings. We uphold the district court's factual findings unless they are clearly erroneous, Minn. R. Civ. P. 52.01, and we will only determine a finding to be clearly erroneous if we are left with "the definite and firm conviction that a mistake was made." V*angsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000).

*Wife's Salary*

The district court found that wife's "gross income is $67,538 per year, or an average of $5,628 per month." Wife challenges this factual finding, contending that her monthly salary is actually $5,417, resulting in a "$211/month error."

At trial, wife's attorney asked wife, "Do you know what your monthly income is?" Wife responded, "I don't know right offhand, because I don't look at that figure." Wife's attorney stated, "All right. We have documents that will . . . satisfy that." Wife submitted an affidavit stating that her monthly salary was "approximately $5,416/month." But the documentary evidence also included wife's Personal Statement of Pension Benefits as of June 30, 2011, indicating a gross annual salary of $67,538 and a cash flow

3

summary listing wife's salary as $67,538. The presence of conflicting evidence in the record, which might lead a different trier of fact to different findings, does not render the district court's findings clearly erroneous. *Crosby v. Crosby*, 587 N.W.2d 292, 296 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999); *see also Vangsness*, 607 N.W.2d at 474 ("That the record might support findings other than those made by the [district] court does not show that the court's findings are defective."). Thus, the district court did not clearly err by finding that wife's average monthly salary was $5,628.

*Health Insurance*

Wife next argues that "[wife's] and [husband's] health insurance costs were wrongly determined by the [district court]." In her prehearing statement, wife indicated that her health insurance would not be available to husband after the divorce. Husband anticipated that, post-dissolution, he would continue his coverage through COBRA at a monthly cost of $648. Husband testified that he obtained the information regarding the monthly cost for COBRA coverage from wife's employer. The district court concluded that "[e]ach party shall be responsible for maintaining her or his own medical and dental insurance coverage, and for payment of her or his unreimbursed medical and dental expenses." The district court found that husband's reasonable and necessary monthly expenses included $648 for his anticipated health-insurance costs.

Wife now argues that husband's health insurance is still covered by her employer and that her health-insurance premiums have increased by $240 per month. She moved for amended factual findings on this issue, which the district court denied. She claims

that "[t]he health insurance errors made a $888/month swing in the combined budget calculations."

Wife contends that evidence in the record indicates that her health insurance would continue to cover husband after the divorce, at no additional cost. But the record evidence also suggests that wife's health insurance would not be available to husband at no cost. The presence of conflicting evidence in the record does not render the district court's findings clearly erroneous. *Crosby*, 587 N.W.2d at 296.

Moreover, wife presented evidence of her increased insurance premiums in an affidavit submitted after she moved the district court for amended findings. But "[a] motion to amend findings must be based on the files, exhibits, and minutes of the court, not on evidence that is not a part of the record." *Zander v. Zander*, 720 N.W.2d 360, 364 (Minn. App. 2006), *review denied* (Minn. Nov. 14, 2006). "When considering a motion for amended findings, a district court must apply the evidence as submitted during the trial of the case and may neither go outside the record, nor consider new evidence." *Id.* (quotation omitted). Only when a motion for amended findings is made in conjunction with a proper motion for a new trial, can the district court consider new evidence or other pertinent facts that are not part of the trial record. *Chin v. Zoet*, 418 N.W.2d 191, 195 n.2 (Minn. App. 1988). The district court therefore did not abuse its discretion by denying wife's motion to amend the findings based on her alleged increased insurance premiums. *See Lenz v. Lenz*, 430 N.W.2d 168, 169 (Minn. 1988) (stating that a district court abuses its discretion by making findings unsupported by the evidence or improperly applying the law).

Wife insists that her "taxable maintenance should be increased to account for the salary and health insurance errors, which are very significant for a grade school teacher." Because the district court's factual findings regarding wife's salary and husband's health-insurance costs are not clearly erroneous, this argument fails.

*Mortgage Costs*

The district court awarded "exclusive use and occupancy of the marital homestead" to wife and ordered wife to pay the mortgage. Wife argues that husband "should be required to equally contribute to the cost of the homestead in which he retains a 50% floating lien interest, including the cost of repairs necessary for sale."

Wife's argument does not challenge a specific factual finding. To the extent she argues that the judgment and decree inequitably apportioned the expenses related to the marital homestead or that she does not have adequate resources to meet her obligations under the judgment and decree, we construe her challenge as being to the district court's spousal-maintenance award. An appellate court reviews a district court's maintenance award under an abuse-of-discretion standard. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). A district court abuses its discretion regarding maintenance if its findings of fact are unsupported by the record or if it improperly applies the law. *Id.*

Wife argues that the district court abused its discretion by not requiring husband "to contribute to the costs or maintenance of the homestead," leaving her to "solely pay for and otherwise maintain a costly asset from which [husband] will equally profit." The district court acknowledged that "the monthly mortgage payment is high," but nonetheless concluded that wife had "sufficient asset resources to ease the stress of the

6

mortgage payment on cash flow" until the house could be "placed on the market for sale not later than June of 2014, with the parties to share equally the net proceeds of the sale." And the district court considered the mortgage payments when it awarded wife $2,900 per month in spousal maintenance. In fact, the district court noted that wife's "monthly living expenses will be further reduced once the homestead is sold, and the high current monthly mortgage obligation will decrease substantially," but it did not order a concurrent decrease in spousal maintenance. On this record, wife has not shown that the district court abused its discretion by requiring wife to pay the mortgage and maintenance costs associated with the marital home.

## II.

Husband is a self-employed dentist doing business as James Kernik, D.D.S. The district court concluded that husband

> is the owner of his dental practice, in which he is the sole practitioner. The fair market value of the practice is $375,000, of which $245,000 is goodwill. [Husband] and the practice are one and the same. All of the goodwill is found to be personal, thus making the adjusted value of [husband's] dental practice $130,000.

Wife argues that the district court's "valuation of [husband's] dental practice, unsupported by analysis of the numerous relevant factors, is clearly erroneous due to its exclusion of all institutional goodwill." A district court's valuation of an item of property is a finding of fact, and it will not be set aside unless it is clearly erroneous on the record as a whole. *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001); *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975).

7

"Goodwill value is a transferable property right which is generally defined as the amount a willing buyer would pay for a going concern above the book value of the assets." *Roth v. Roth*, 406 N.W.2d 77, 80 (Minn. App. 1987). "If expert witnesses give conflicting opinions on the valuation of assets which have a reasonable basis in fact, it is for the trier of fact to decide, and the decision will not be overturned on appeal unless clearly erroneous." *Id.*

Institutional goodwill is marital property subject to just and equitable division, whereas personal goodwill is not included in the divisible marital estate. *Baker v. Baker*, 733 N.W.2d 815, 819 (Minn. App. 2007), *aff'd in part, rev'd in part on other grounds*, 753 N.W.2d 644 (Minn. 2008). Because the district court found that husband and his dental practice are "one and the same," the district court treated the value of the goodwill—$245,000—as entirely personal goodwill.

The parties retained Stephen Dennis, a neutral financial expert, to prepare a valuation of husband's dental practice. Dennis concluded that the fair market value of the practice was $375,000, comprised of a book value of $130,000 and goodwill valued at $245,000. Dennis stated that "[u]ltimately, the demarcation between 'personal goodwill' and 'institutional goodwill' is a question for the court to decide, looking at all of the facts and circumstances," but opined that "[a]s the sole dentist working for the practice, [husband] is responsible for all of the [p]ractice's productions [and] [a]ccordingly, almost all of the [p]ractice's revenue is associated with [husband's] 'personal goodwill.'" Dennis reached this conclusion by meeting with husband, visiting

8

his dental practice location, and examining the dental practice's financial statements and books.

Wife hired Rick Berning, a business valuation expert, who opined that 25-75% of the goodwill value is institutional goodwill. Berning's opinion was based on his review of Dennis's valuation. He did not visit husband's dental practice, meet with husband, or examine the practice's financial statements or books.

Dennis and Berning gave conflicting opinions regarding the goodwill valuation of husband's dental practice. It was for the district court to resolve the conflicting expert opinions. *See Roth*, 406 N.W.2d at 80. Considering the record as a whole, the district court's valuation of husband's dental practice is not clearly erroneous. *See Maurer*, 623 N.W.2d at 606.

**III.**

Wife argues that the district court "erroneously valued [her] retirement accounts." Valuation and division of pension benefits is generally a matter for the district court's discretion. *Taylor v. Taylor*, 329 N.W.2d 795, 798 (Minn. 1983). A district court's valuation of an item of property is a finding of fact, and it will not be set aside unless it is clearly erroneous on the record as a whole. *Maurer*, 623 N.W.2d at 606. "The applicability of a statute is an issue of statutory interpretation, which appellate courts review de novo." *Ramirez v. Ramirez*, 630 N.W.2d 463, 465 (Minn. App. 2001).

Wife first argues that the district court erroneously valued her "TRA pension, by ignoring the statutory interest rate . . . and by ignoring the pension's historical rate of return as well as projected rate of return." The district court heard detailed testimony

from both parties' experts regarding the present value of wife's TRA pension, and found the "present value" of wife's TRA pension to be $399,600.[1]

Wife's actuary applied a discount rate of 8.0%, which is the statutory discount rate set forth in Minn. Stat. § 356.215, subd. 8 (2012). Application of this discount rate resulted in a present value of $220,003. Husband's actuary applied a 4.5% discount rate, which resulted in a valuation of $399,600. Husband's actuary testified that Minn. Stat. § 356.215 is "not applicable to a calculation for an individual in a marital dissolution."

Wife contends that the district court was required to apply the actuarial assumptions provided in section 356.215. Section 356.215 does not appear, on its face, to be applicable in the marriage-dissolution context. This statute describes an annual process of determining the financial status of tax-supported retirement and pension plans for public employees. *See* Minn. Stat. § 356.215, subd. 2 (2012) ("It is the policy of the legislature that it is necessary and appropriate to determine annually the financial status

---

[1] Present value is a term of art. *Johnson v. Johnson*, 627 N.W.2d 359, 362 (Minn. App. 2001), *review denied* (Minn. Aug. 15, 2001). It is defined as

> the sum which a person would take *now* in return for giving up the right to receive an unknown number of monthly checks in the future. The present value is discounted by various actuarial calculations to reflect contingencies affecting the eventual payout, including discounts for mortality, inflation, interest, probability of vesting and probability of continued employment. Not all of these calculations are applicable to every retirement plan. . . . The present value is reduced to reflect the risk of [the employee's] death prior to receipt of pension benefits and to take account of the interest that could be earned if the money were now available for investment.

*DuBois v. DuBois*, 335 N.W.2d 503, 506 (Minn. 1983).

of tax-supported retirement and pension plans for public employees."). Wife relies on Minn. Stat. § 518.582 (2012) to support her contention that section 356.215 impacts the pension valuation. Section 518.582 provides the "Procedure for Valuing Pension Benefits or Rights" and states that a district court "may appoint a qualified person experienced in the valuation of pension benefits and rights to function as an expert witness in valuing pension benefits or rights." Minn. Stat. § 518.582, subd. 1. The statute then discusses the standards to be applied by the court-appointed actuary:

> A court appointed actuary shall determine the present value of pension benefits or rights that are marital property of the parties to the action based on the applicable plan documents of the pension plan and the applicable actuarial assumptions specified for use in calculating optional annuity forms by the pension plan or for funding the pension plan, if reasonable, or as specified by the court.

*Id.*, subd. 2. Wife argues that "[t]he applicable actuarial assumptions specified for use in calculating optional annuity forms by the pension plan or for funding the pension plan in the case of [wife's] TRA, are the rates set forth in Minn. Stat. § 356.215."

For the reasons that follow, we are not persuaded that the district court erred in valuing wife's TRA pension. First, the district court did not appoint an actuary under section 518.582. It is therefore not clear that the standards in section 518.582, subdivision 2, apply. Second, wife does not cite to any documentation in the record to support her contention that her TRA pension relies on section 356.215 for calculating optional annuity forms or funding the pension plan. *See* Minn. R. Civ. App. P. 128.02, subd. 1(c) (stating that each statement of material fact in appellant's brief "shall" be accompanied by cite to record). Moreover, those standards are only applicable "if

11

reasonable." Minn. Stat. § 518.582, subd. 2. Husband's actuary testified that she applied 4.5% because it "is a better reflection of a rate that somebody could earn on their own over the long-term . . . and it's more reflective of where rates are right now and long-term what an individual could earn on that money," implying that 8.0% is not a reasonable discount rate in this case. Third, wife's actuary testified that "it was my opinion that I don't need to deviate from the statute in this case," acknowledging that application of the discount rate from section 356.215 is not statutorily required. He further testified that "he discussed what rate to use" with wife's attorney. And fourth, the district court was in the best position to evaluate the testimony of the expert witnesses regarding their respective approaches to valuing wife's TRA pension. *See Roth*, 406 N.W.2d at 80 ("If expert witnesses give conflicting opinions on the valuation of assets which have a reasonable basis in fact, it is for the trier of fact to decide, and the decision will not be overturned on appeal unless clearly erroneous.").

In sum, neither the statutory language nor wife's own evidence indicates that the district court was required to use the statutory discount rate when valuing wife's TRA pension. Because wife has not shown that application of the statutory discount rate was mandatory, she has not shown that the district court clearly erred by applying a different rate.

Wife next argues that the district court erroneously calculated her Valic and 403(b) retirement accounts by using "a high 12-31-2011 valuation on the assets awarded to [wife] rather than statement mid-points which were lower and more precise to the valuation date." She therefore contends that her "Valic account was valued by the

12

[district court] at $317,716 rather than . . . $315,985; and her 403(b) was valued at $29,886 rather than the mid-point value of $27,788." Wife does not cite legal authority indicating that the district court must use "statement mid-points" when valuing retirement accounts. *See State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (stating that an assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection).

We nonetheless observe that an appellate court does not require the district court to be exact in its valuation of assets. "[I]t is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn. 1979). Because the valuation of wife's Valic and 403(b) retirement funds were within a reasonable range of figures, the district court's valuation was not clearly erroneous.

**IV.**

Wife argues that the district court abused its discretion in its division of the parties' debts. The district court found that wife "incurred [$40,204 in] credit card debts for living expenses following the separation of the parties" and that because she "chose to accrue this debt rather than pay the monthly balances from available funds, . . . repayment should be [her] responsibility." The district court also found that husband borrowed $44,698 against his 401K to pay the parties' 2010 joint income-tax liability and apportioned responsibility for this debt between the parties.

"A [district] court's apportionment of marital debt is treated as a property division and reviewed under an abuse of discretion standard." *Berenberg v. Berenberg*, 474

13

N.W.2d 843, 848 (Minn. App. 1991), *review denied* (Minn. Nov. 13, 2001). "A [district] court is not required to apportion marital debts but is only required to meet the just and equitable standard of property divisions." *Id.* A district court abuses its discretion in dividing property if it resolves the matter in a manner "that is against logic and the facts on record." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984).

Wife argues that because "[husband] paid no child support or spousal maintenance after he moved out of the marital homestead," she "had to use her credit cards for her normal living expenses and to repair broken appliances in the marital homestead." She therefore contends that her credit-card debt should be equally divided between the parties. But the district court noted that after the parties' separation, husband continued to pay "the monthly mortgage of $3,962 and some other home expenses." The district court further found that wife had "available funds" to pay the monthly balances and yet "chose to accrue this debt" instead. The district court did not abuse its discretion by allocating wife's credit-card debt to wife.

Wife also argues that husband improperly used funds that were available to pay the parties' 2010 joint income-tax liability to pay his attorney, "unrequested 'rent' to his girlfriend," and the parties' adult daughter's "college tuition, room, board and expenses." She therefore contends that husband "should be required to pay back his own 401K loan in its entirety." But regardless of the availability of other funds, wife does not dispute that it was a *joint* tax liability. The district court did not abuse its discretion by apportioning the debt associated with the parties' joint tax liability equally between the parties.

14

Lastly, wife argues that "retirement savings should have been part of [her] budget." But wife did not include retirement contributions in the itemization of her reasonable and necessary monthly living expenses that she submitted to the district court. At trial, wife's attorney asked wife, "Your budget, you're not asking for any money for contribution to retirement, correct?" and wife responded, "Correct." Because wife did not include retirement savings as part of her monthly expenses, we do not consider her arguments regarding the issue. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts must generally consider only those issues that were presented to and considered by the district court in deciding the matter before it).

## V.

Wife argues that the district court "erred in failing to award [her] at least $13,075" because husband "took at least $13,075 of marital funds to pay his attorneys before the valuation date." "Any amount taken from marital property to pay one party's attorney fees should be accounted for . . . and the other party compensated in the distribution." *Thomas v. Thomas*, 407 N.W.2d 124, 128 (Minn. App. 1987).

Wife contends that she "clearly established that [husband] took at least $13,075 of marital funds to pay his attorneys before the valuation date." But she provides no further analysis, and her cites to the record only indicate that husband spent $7,650 of marital funds on legal fees in 2011. Husband contends that he spent $4,375.88 on attorney fees before the November 22, 2011 valuation date, which offset wife's expenditure of $4,256.75 of marital funds on her attorney fees during the same time period. On this record, wife has not met her burden of demonstrating that the district court erred. *See*

15

*Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949) ("[O]n appeal error is never presumed. It must be made to appear affirmatively before there can be reversal. Not only that, but the burden of showing error rests upon the one who relies upon it." (quotation omitted)).

## VI.

Wife challenges the district court's award of $6,350 in attorney fees from wife to respondent Murphy, husband's then girlfriend, and the resulting judgment for that amount. The award stemmed from a discovery dispute between wife and Murphy.

In awarding attorney fees to Murphy, the district court found that wife's attorney served a subpoena duces tecum on Murphy on August 20, 2012, "requesting essentially five years of her personal and business records." After an in-chambers conference, the district court instructed wife's attorney to first proceed with a deposition of husband and then determine whether it was still necessary to depose Murphy. But wife's attorney served an amended notice of taking deposition and subpoena on Murphy on August 27, before husband had been deposed as directed by the district court. The subpoena "requested essentially the same documentation that was requested previously." In response, Murphy retained counsel to assist her in defending against the subpoena. After a second chambers conference to address the most recent subpoena, the district court advised wife's attorney that it would grant a protective order in favor of Murphy, "precluding [Murphy] from having to provide any of the documents requested by [wife's] attorney, except for those business and personal documents from [Murphy] that had [husband's] name on them." Lastly, the district court found that Murphy was not

16

subpoenaed as a witness to testify at the trial in this matter and that there were "very few documents from [Murphy] in response to the [s]ubpoena that were used at the trial in this case."

"Attorney fees are not recoverable in litigation unless there is a specific contract permitting or statute authorizing such recovery." *Bowman v. Bowman*, 493 N.W.2d 141, 145 (Minn. App. 1992). "We review the district court's award of attorney fees or costs for abuse of discretion." *Brickner v. One Land Dev. Co.*, 742 N.W.2d 706, 711 (Minn. App. 2007), *review denied* (Minn. Mar. 18, 2008).

Wife makes three arguments: (1) the district court did not "equitably apportion the expenses of resolving the disagreement"; (2) the amount of the award was unreasonable; and (3) her discovery requests were "substantially justified." Before addressing wife's specific arguments, we consider the basis for the district court's attorney fee award and judgment. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (stating that appellate courts have a responsibility "to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities") (quotation omitted); *Greenbush State Bank v. Stephens*, 463 N.W.2d 303, 306 n.1 (Minn. App. 1990) (applying *Hannuksela* in a civil case), *review denied* (Minn. Feb. 4, 1991).

The district court cited two potential grounds for its award of attorney fees: Minn. R. Civ. P. 37.01 and 45.03. The district court awarded $6,350 to Murphy under rule 37.01 for "the fees she had to incur relative to this matter, including her having to obtain a protective order." But the district court declined to order reimbursement at the rate of

17

$300 per hour for Murphy's time to prepare for and attend her deposition in this case. The district court noted that Murphy was paid $75 per hour for her preparation and attendance at the deposition and refused to order any further amount "as a reasonable fee" under rule 45.03(d).

We first consider whether rule 37 supports the attorney fee award. Murphy obtained a protective order limiting her obligation to respond to wife's discovery requests. Protective orders are governed by Minn. R. Civ. P. 26.03, which provides that "[r]ule 37.01(d) applies to the award of expenses incurred in connection with the motion [for a protective order]." Rule 37.01, in turn, governs motions to compel discovery. Subparts (d)(2) and (3) of rule 37.01, which the district court cited as a basis for the award, authorize the district court to order payment of "the reasonable expenses . . . including attorney fees" and to "apportion the reasonable expenses . . . among the parties and persons in a just manner."

Although subparts (d)(2) and (3) refer to the entry of "any protective order authorized by Rule 26.03," the basis for an award of reasonable expenses under rule 37.01(d) is the district court's ruling on a motion to compel discovery. For example, Minn. R. Civ. P. 37.01(d)(1) states that "[i]f the motion [to compel] is granted," the court shall require the party or deponent who necessitated the motion "to pay to the moving party the reasonable expenses incurred in making the motion." Subpart (d)(2) states that "[i]f the motion [to compel] is denied, the court may enter any protective order authorized under Rule 26.03 and shall . . . require the moving party . . to pay to the party or deponent who opposed the motion [to compel] the reasonable expenses incurred in

18

opposing the motion, including attorney fees"). Minn. R. Civ. P. 37.01 (d)(2). And subpart (d)(3) states that "[i]f the motion [to compel] is granted in part and denied in part, the court may enter any protective order authorized under Rule 26.03 and may . . . apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." Minn. R. Civ. P. 37.01(d)(3).

In sum, under rule 37.01(d), an award of reasonable expenses, including attorney fees, is triggered by a motion to compel discovery. Although Murphy obtained a protective order, wife did not move to compel discovery. *See* Minn. R. Civ. P. 7.02 ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."). We are not aware of any law authorizing an award of attorney fees for expenses incurred in connection with a protective order other than rule 37.01. *See* Minn. R. Civ. P. 26.03. Because wife did not move to compel discovery, we conclude that rule 37.01 does not support the fee award in this case.

We next consider whether an award is appropriate under Minn. R. Civ. P. 45.03. The rule provides that

> [a] party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

19

Minn. R. Civ. P. 45.03(a). The advisory committee notes that "[r]ule 45.03(a) explicitly recognizes that the costs of discovery from non-parties should be borne, to the extent feasible, by the parties to the action and the burden of subpoenaed parties should be minimized." Minn. R. Civ. P. 45.03 2010 advisory comm. cmt.

The district court's findings in support of its attorney fee award for Murphy suggest that it might have awarded attorney fees under rule 45.03(a) if it had not mistakenly based its order on rule 37.01(d). Instead, it limited its application of rule 45.03 to subpart (d), which provides for compensation of certain nonparty witnesses.

Under the circumstances, we reverse the district court's award of attorney fees and judgment under rule 37.01(d), and we remand for the district court to enter an award under rule 45.03(a), if it deems such an award appropriate. The district court has discretion to reopen the record, but it need not do so. *See Janssen v. Best & Flanagan*, *LLP*, 704 N.W.2d 759, 763 (Minn. 2005) ("[D]istrict courts are given broad discretion to determine how to proceed on remand, as they may act in any way not inconsistent with the remand instructions provided."). Given our decision, we do not address wife's specific arguments regarding the attorney fee award, which are based on the district court's reliance on rule 37.01.

**Affirmed in part, reversed in part, and remanded.**

20