*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0120**
**A23-0218**
**A23-0219**

Lisa Ann Poseley, petitioner,
Appellant,

vs.

Andrew Scott Duff,
Respondent,

and

Lisa Ann Poseley on Behalf of Minor Children, petitioner,
Appellant,

vs.

Andrew Scott Duff,
Respondent.

**Filed December 26, 2023**
**Affirmed**
**Reyes, Judge**

Hennepin County District Court
File No. 27-FA-14-5309

Lisa A. Poseley, St. Louis Park, Minnesota (self-represented appellant)

Laurie Mack-Wagner, Elizabeth E. Due, Mack & Santana Law Offices, P.C., Minneapolis, Minnesota; and

Jill A. Brisbois, The JAB Firm, Minneapolis, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Reyes, Judge; and Smith, Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

In this these consolidated appeals, appellant challenges several district court procedural and evidentiary decisions as well as its orders to: (1) modify legal custody of the parties' minor children and (2) dismiss appellant's petition for an order for protection (OFP) against respondent. We affirm.

**FACTS**

In 2014, the district court dissolved the marriage of appellant Lisa Ann Poseley (mother) and respondent Andrew Scott Duff (father). The years following the parties' divorce have been defined by mutual animosity and numerous lawsuits, primarily concerning the parties' two minor children, M.D. and L.D. These consolidated appeals concern father's 2021 motion seeking sole legal custody of the children and mother's 2022 petition for an order for protection (OFP) against father.

**I.     The district court grants father sole legal custody of M.D. and L.D.**

A 2015 district court order provided the parties with joint legal and joint physical custody of their minor children. However, the parties could not agree on a treatment plan for their children's mental-health conditions. Clinical professionals diagnosed L.D. with autism-spectrum disorder and M.D. with generalized-anxiety disorder and specified-depressive disorder. Mother refused to accept L.D.'s autism diagnosis and resisted treatment plans suggested by both the children's school and their court-appointed therapist,

2

Dr. Gearity. The disagreements regarding the children's healthcare persisted through September 2021, when father filed a motion seeking sole legal custody of the children. Father argued that mother's "alienation tactics" and her refusal to abide by professional clinicians' healthcare recommendations endangered the children's emotional and mental health. After determining that father had established a prima facie case to modify custody, the district court set father's motion for an evidentiary hearing.

### A. The evidentiary hearing and subsequent order granting father sole legal custody.

In August 2022, the district court conducted a four-day evidentiary hearing concerning father's motion to obtain sole legal custody of the children, which included over 400 exhibits and testimony from both parties, medical professionals, school representatives, and the children's court-appointed therapist, Dr. Gearity.

Before the hearing, mother filed a motion in limine to exclude Dr. Gearity's testimony, affidavit, and emails with the parties, arguing that the therapist-client privilege under Minn. Stat. § 595.02, subd. 1 (g) (2022), barred admission of the evidence. The district court determined that, although the therapist-client privilege applied, mother waived the privilege with respect to Dr. Gearity's affidavit and emails with the family by filing the exhibits with the court as public documents. The district court therefore limited Dr. Gearity's testimony to the contents of the exhibits that mother had filed with the court.

Following the hearing, the district court issued an order granting father sole legal custody of the parties' minor children.[1] The parties agree that the order describes certain exhibits as admitted when the exhibits were in fact withdrawn or deemed inadmissible. However, the parties dispute whether other exhibits that the district court's order lists as admitted were in fact received during the evidentiary hearing.

**B.      Mother's Requests for Need-Based Attorney Fees**

Mother responded to father's custody-modification motion by moving for need-based attorney fees under Minn. Stat. § 518.14 (2022). The district court denied the motion, finding that mother had sufficient assets to pay her own legal costs. Mother later renewed her motion for need-based fees, which the district court denied.

**C.      Disputed Allocation of Special-Master Fees**

The parties stipulated to the district court appointing a special master to help resolve the parties' custody disputes before the evidentiary hearing. Mother filed a motion requesting that she pay for 10% of the special-master fees, with father paying the remaining 90%. Instead, the district court allocated the fees equally between the parties after finding that the relevant considerations outlined in Minn. R. Civ. P. 53.08(c) favored an even distribution of the special-master fees.

**II.      The district court dismisses mother's OFP petition.**

In the interim between the evidentiary hearing and the district court's order granting father sole legal custody, mother filed an ex parte OFP petition, alleging that father had

---

[1] The parties continue to have joint physical custody and the children's primary physical residence is with mother.

physically abused the children. The district court issued an emergency ex parte OFP, appointed a guardian ad litem (GAL), and set mother's OFP petition for an evidentiary hearing.

### A. The Purported Ex Parte Communication Between the District Court and the GAL

The GAL's report was initially due to the parties and the district court the day before the evidentiary hearing. However, the district court granted the GAL's request to extend the report deadline until the day of the hearing after determining that the GAL's concerns about the children's safety created exigent circumstances justifying the delay. The district court denied mother's request for a continuance based on the GAL's delayed report.

### B. OFP Evidentiary Hearing and Subsequent Dismissal

At the OFP evidentiary hearing, the district court heard testimony from both parties, a Child Protective Services (CPS) agent who had investigated mother's abuse allegations, and the GAL. Mother and father offered competing testimony, while the CPS agent and GAL both supported father's claim that he had not abused the children. Following the hearing, the district court dismissed mother's OFP petition, determining that mother had not demonstrated that father abused the children. The parties then filed three separate appeals from the district court's final judgments in the custody and OFP cases, and this court consolidated those appeals.

### DECISION

Mother challenges the district court's: (1) evidentiary determinations in the parties' custody matter; (2) order granting father sole legal custody of the children; (3) denial of

5

mother's requests for need-based attorney fees; (4) allocation of the special-master fees equally between the parties; (5) review of the GAL's request to extend the deadline to file her report as a prejudicial ex parte communication; and (6) order dismissing mother's OFP petition. We address each issue in turn.[2]

I.      **The district court did not abuse its discretion by admitting limited evidence concerning Dr. Gearity or by citing unreceived exhibits in its custody-modification order.**

Mother argues that the district court abused its discretion by: (1) admitting Dr. Gearity's limited testimony, affidavit, and email exchanges between Dr. Gearity and the parties over mother's objection that the evidence violated the therapist-client privilege and (2) citing to unreceived exhibits in its order granting father sole legal custody of the parties' children. Mother's arguments fail.

A.      **The district court did not abuse its discretion by determining that mother waived the therapist-client privilege.**

Whether an evidentiary privilege applies is a legal question that appellate courts review de novo. *State v. Expose*, 872 N.W.2d 252, 257 (Minn. 2015). However, appellate courts will not reverse a district court's evidentiary ruling absent a clear abuse of discretion. *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). A district court abuses its discretion by making unsupported factual findings, misapplying the law, or issuing a decision that contradicts the facts on record. *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022).

---

[2] Although this is not precisely how mother organized the issues in her brief, we address the issues in this order to provide a more natural transition between interrelated issues and review standards.

The district court determined that, although the therapist-client privilege in Minn. Stat. § 595.02, subd. 1(g) (2022), applied to Dr. Gearity, mother had waived the privilege with respect to the challenged exhibits by filing the exhibits with the district court. A party may waive an evidentiary privilege through either their "conduct or affirmative consent." *State ex rel. Schuler v. Tahash*, 154 N.W.2d 200, 205 (Minn. 1967). A party's conduct waives the therapist-client privilege when the party's actions disclose otherwise confidential information to third parties. *Muller v. Rogers*, 534 N.W.2d 724, 727 (Minn. App. 1995). A party can also waive the therapist-client privilege on behalf of a person under that party's control by voluntarily placing that person's mental condition at issue. Minn. R. Civ. P. 35.03.

Mother argues that she did not waive her privilege intentionally and cites *State v. Expose* to argue that it was not possible for her conduct to waive the therapist-client privilege implicitly. 849 N.W.2d 427 (Minn. App. 2014), *rev. granted* (Minn. Sept. 24, 2014). Mother's argument is unpersuasive. *Expose* was a criminal case that discussed whether a defendant waived the therapist-client privilege under the Minnesota Rules of Criminal Procedure by failing to claim the privilege in a pretrial motion. *State v. Expose*, 872 N.W.2d 252, 256 (Minn. 2015). Although the supreme court in *Expose* held that the defendant had not waived his privilege, its decision does not undermine the general principle that a privilege can be waived through a party's conduct.

Here, the record supports the district court's determination that mother had waived the therapist-client privilege. The parties' minor children were under mother's control and were being treated by Dr. Gearity for numerous mental conditions pursuant to a previous

7

court order.  Mother waived the therapist-client privilege with respect to the challenged evidence by voluntarily filing Gearity's affidavit and email exchanges with the district court, placing the exhibits into the public record.  Mother's affirmative conduct in filing the exhibits both disclosed confidential information to third parties and placed Dr. Gearity's treatment of M.D. and L.D.'s mental conditions at issue, further demonstrating a waiver of the therapist-client privilege.  *See Muller*, 534 N.W.2d at 727; Minn. R. Civ. P. 35.03.  The district court limited evidence concerning Dr. Gearity to the contents of Gearity's affidavit and the email exchanges that mother herself disclosed to the court.  The district court therefore did not abuse its discretion by admitting the challenged evidence over mother's privilege objection.

**B.     The district court's order did not rely on exhibits that were not received during the evidentiary hearing.**

Mother contends that the district court abused its discretion by citing exhibits 007-054, which documented Dr. Gearity's email exchanges with the family, in its order modifying legal custody because the exhibits were never admitted into evidence.  We disagree.

The evidentiary hearing transcript shows that the district court admitted Dr. Gearity's emails into evidence.  The district court stated that "[T]he [exhibits] deemed admitted are . . . 360B and Petitioner's exhibits 007 through 54."  The district court therefore did not abuse its discretion by citing to Dr. Gearity's email exchanges in its order.

Mother also asserts that the district court's order improperly lists several other exhibits as admitted when they were in fact withdrawn or deemed inadmissible.  With

8

respect to these exhibits, the district court appears to have made a clerical error when transcribing the admitted-exhibit numbers in its order. A clerical error is one that is: "apparent on the face of the record and capable of being corrected by reference to the record only." *Wilson v. City of Fergus Falls*, 232 N.W. 322, 332 (Minn. 1930). Although there are discrepancies in the exhibits received at the evidentiary hearing and those listed as admitted in the district court's order, the correct exhibit numbers can be deduced from the evidentiary hearing transcript. Upon reviewing the evidentiary hearing transcript, the district court did not rely on any exhibits that were not admitted as part of its substantive analysis. Because the district court's order relies only on exhibits that were received during the evidentiary hearing, any clerical error did not prejudice mother. Therefore, the district court did not commit reversible error or abuse its discretion by incorrectly transcribing the admitted exhibits. *See George v. Estate of Baker*, 724 N.W.2d 1, 9 (Minn. 2006) (stating that evidentiary errors are prejudicial only if they could have reasonably affected the ultimate outcome).

## II. The district court did not abuse its discretion by granting father sole legal custody of the children.

Mother asserts that the record does not support the district court's order granting father sole legal custody of the parties' minor children. We disagree.

District courts have "broad discretion" to determine custody matters. *Durkin v. Hinich*, 442 N.W.2d 148, 151 (Minn. 1989). Appellate review of custody determinations is therefore limited to whether the district court abused its discretion by "making findings

of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey*, 975 N.W.2d at 506.

The parties have shared joint legal custody of the children since 2015. To modify a prior custody order based on an allegation that the children are endangered, the district court must determine that: (1) the circumstances of the children or custodial parent have changed since the prior order; (2) modifying custody would be in the children's best interests; (3) the children's present environment endangers their physical or emotional health or emotional development; and (4) the harm caused by changing the children's environment is outweighed by the advantages of the new environment. Minn. Stat. § 518.18(d) (2022); *Geibe v. Geibe*, 571 N.W.2d 774, 778 (Minn. App. 1997).

Mother only disputes the endangerment prong, contending that nothing in the record supports the district court's determination that mother endangered the parties' children by preventing them from receiving professionally recommended psychological care. Demonstrating endangerment requires the party seeking the custody modification to prove that the children's current environment presents "a significant degree" of danger, but that danger can be solely related to the children's emotional health. *Geibe*, 571 N.W.2d at 778.

Here, the district court determined that mother's refusal to accept the advice and diagnoses offered by clinical professionals caused the children to suffer a disjointed, suboptimal treatment regimen. The parties' relationship with the children's therapist, Dr. Gearity, exemplifies the damaging impact of mother's disruptive behavior. The district court determined that Mother's unfounded belief that Dr. Gearity and father were conspiring against her led mother to resist Dr. Gearity's treatment and advice, disrupt

Dr. Gearity's sessions, and undermine Dr. Gearity's credibility in front of the children. Mother's conduct led Dr. Gearity to submit an affidavit to the district court lamenting mother's interference and the damage it was causing to the children's emotional health and development.

Additionally, based on the witness testimony and the parties' extensive procedural history, the district court determined that mother's animosity towards father undermined the children's mental-health treatment and that mother magnified the detrimental impact of the rift between the parties by refusing to engage with the special master because of the disputed fee allocation. The evidence presented at the custody hearing supports the district court's determination that mother's persistent hostility towards father and the children's healthcare providers created a "significant degree" of danger for the children. *See Geibe*, 571 N.W.2d at 778. The district court therefore did not abuse its discretion by granting father sole legal custody of the children.

III. **The district court did not abuse its discretion by denying both mother's initial and renewed motions for need-based attorney fees.**

Mother contends that the district court abused its discretion by denying her motion for need-based attorney fees. We are not convinced.

District courts must grant need-based attorney fees if the requesting party meets the requirements in Minn. Stat. § 518.14, subd. 1. *Holmberg v. Holmberg*, 588 N.W.2d 720, 727 (Minn. 1999). This decision "rests almost entirely within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Crosby v. Crosby*, 587 N.W.2d 292, 298 (Minn. App. 1998), *rev. denied* (Minn. Feb. 18, 1999). The district

11

court's valuation of mother's assets is a factual finding that we review for clear error. *Muschik v. Conner-Muschik*, 920 N.W.2d 215, 224 (Minn. App. 2018).

A district court "shall" award need-based attorney fees if it finds: (1) "that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding; (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them." Minn. Stat. § 518.14, subd. 1.

Here, the district court determined that mother had not demonstrated that she did not have the means to pay her own fees. Mother provided no financial documentation to the district court, instead relying on unverified financial liabilities to support her request. It is undisputed that mother had an income of $60,000 in 2020, obtained a $2,025,000 property settlement after the parties' divorce, and has received over $300,000 in child-support payments from father since the divorce. The record supports the district court's finding that these financial assets were more than sufficient to cover mother's expenses, even after accounting for mother's unverified liabilities. The district court therefore did not abuse its discretion by denying mother's motion for need-based attorney fees.

Mother next challenges the district court's refusal to allow her to renew her motion for need-based attorney fees. Although need-based attorney fees may be sought at any stage in the proceeding, a party may not make successive motions for the same relief unless given the district court's permission or if new pertinent facts arise after the first motion.

*Barrett v. Smith*, 237 N.W. 15, 18 (Minn. 1931). To rule otherwise would be to allow what is functionally an improper collateral attack on the initial determination.

Mother's second motion failed to provide new pertinent facts that would permit a successive motion for the same relief. Because mother neither obtained the district court's permission to file a second motion for need-based attorney fees, nor provided the district court with new pertinent facts, the district court properly denied mother's renewed request.

**IV.     The district court did not abuse its discretion by allocating the special-master fees equally between the parties.**

Mother next argues that the district court abused its discretion by requiring mother to pay half of the special-master fees. As with her motion for need-based attorney fees, this argument fails because of mother's inability to demonstrate financial need.

We review the district court's allocation of costs for an abuse of discretion. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 740 (Minn. 1997). When allocating special-master fees, the district court must consider: (1) the nature and amount of the controversy; (2) the means of the parties; and (3) the extent to which any party is more responsible than the other for implementing a special master. Minn. R. Civ. P. 53.08(c).

Mother only disputes the district court's findings on the second prong, arguing that the district court failed to account for mother's childcare and living expenses when addressing the means of the parties. The record belies mother's argument. The district court explicitly addressed mother's childcare expenses but determined that, because father's child-support payments covered the children's schooling, extracurricular activities, and medical expenses, mother did not have any childcare expenses that would preclude her

13

from paying the special-master fees. Furthermore, the district court acknowledged mother's living expenses but determined that those expenses were not prohibitive of mother's ability to pay the special-master fees. Considering mother's settlement, income, financial assets, and the fact that mother failed to provide documentation of any expenses or liabilities, the district court acted within its discretion by distributing the special-master fees equally between the parties.

**V. The district court did not engage in a prejudicial ex parte communication with the GAL prior to the OFP evidentiary hearing.**

Mother asserts that the GAL's request before the OFP hearing to extend her report deadline constituted an improper ex parte communication with the district court, which prejudiced her. We disagree.

Ex parte communications between GALs and the district court are prohibited unless the communications concern procedural matters unrelated to the merits of the case. Minn. R. Gen. Prac. 906. For this court to reverse based on the GAL's extension request, mother must show that the GAL's request was an ex parte communication that caused prejudicial error. *Haasken v. Haasken*, 396 N.W.2d 253, 258 (Minn. App. 1986).

Here, the GAL requested an extension to file her report, a communication regarding an administrative matter unrelated to the merits of the case. The district court notified both parties that it would withhold the report until the day of the OFP hearing because the GAL's safety concerns created exigent circumstances justifying the delay. *See* Minn. R. Gen. Prac. 108.01 (permitting delayed GAL reports upon a showing of exigent circumstances). Mother fails to demonstrate that the brief delay in receiving the GAL's report prejudiced

14

her OFP petition. Therefore, her argument is insufficient to obtain relief on appeal. *See Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975) (noting that the party seeking relief must show both error and prejudice resulting from the error); *see also* Minn. R. Civ. P. 61 (requiring harmless error be ignored). Additionally, here, both parties received the report at the same time, and mother was able to read and cross-examine the GAL about the report during the hearing. Mother's claim fails.

**VI.    The district court did not abuse its discretion by dismissing mother's OFP petition.**

Mother asserts that the district court improperly weighed the evidence and competing testimony in dismissing her OFP petition. We are not persuaded.

To obtain an OFP, mother had the burden to show by a preponderance of the evidence that father physically harmed the children or caused the children to fear imminent physical harm. *Oberg v. Bradley*, 868 N.W.2d 62, 64 (Minn. App. 2015); Minn. Stat. § 518B.01 (2022). We review a district court's decision on whether to grant an OFP for an abuse of discretion. *Pechovnik v. Pechovnik*, 765 N.W.2d 94, 98 (Minn. App. 2009). Resolving conflicting evidence and determining witness credibility are tasks left solely to the district court. *Id. at 99*; *Porch v. Gen Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn. App. 2002), *rev. denied* (Minn. June 26, 2002). We will reverse the district court's factual determinations only if we have a "definite and firm conviction that a mistake has been made." *Braend ex rel. Minor Children v. Braend*, 721 N.W.2d 924, 927 (Minn. App. 2006).

At the evidentiary hearing, mother testified about father's alleged abuse and provided photo exhibits showing scratches and bruises on the children's arms. Father denied abusing the children. Father acknowledged that he had caused bruising on one occasion, but that he had done so accidentally while trying to break up a fight between the two children. The CPS agent corroborated father's account. The agent testified that CPS's investigation found no evidence that father abused the children and that certain allegations in mother's OFP petition were impossible. Furthermore, in her report and testimony, the GAL recommended that father be granted sole legal custody of the children after her conversations with the parties' children uncovered no signs of abuse. The district court found that father, the CPS employee, and the GAL were all credible witnesses, while it found that mother was not credible and had instilled a false narrative about father to the parties' children. We defer to the district court's credibility determinations. *Pechovnik*, 765 N.W.2d at 99. The district court therefore did not abuse its discretion by dismissing mother's OFP petition.

**Affirmed.**