In re the Marriage of Judith C.
McCULLOCH, Petitioner,
Appellant,

v.

George F. McCULLOCH, Respondent.

No. C8–88–1012.

Court of Appeals of Minnesota.

Feb. 7, 1989.

Robert N. Schlesinger, St. Paul, for petitioner, appellant.

Bruce Kruger, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and NIERENGARTEN and LESLIE *, JJ.

## OPINION

HUSPENI, Judge.

A judgment and decree dissolving the marriage of appellant Judith C. McCulloch and respondent George F. McCulloch was entered February 17, 1988. Appellant argues that the trial court erred by failing to award her one-half of respondent's future bonus income as maintenance and by amending the court's findings to make part of the marital homestead respondent's nonmarital property. Alternatively, appellant maintains that if the homestead was respondent's nonmarital property, it should have been invaded to avoid unfair hardship to her. We affirm in part, reverse in part and remand.

_____

* Acting as judge of the Court of Appeals by ap-

## FACTS

Three years before the parties' marriage in 1968, respondent purchased a house for $29,973, subject to a mortgage of $24,000. At the time of the marriage, the value of the house had appreciated to $32,500.

At the time of the parties' marriage, appellant was 24 and had worked full time for Northwestern Bell and respondent was a widower of 38 with four children ranging in age from 12 years to 18 months. Respondent was at that time, and still is, employed by Hauenstein & Burmeister, Inc. (H & B), a company which generates much of its revenue through sales of elevators and their components. After the marriage, appellant left the workplace, moved into respondent's home and cared for the children. Subsequently, two children were born to the parties; one in 1969, the other in 1976. The younger child is still a minor and presently resides with appellant.

Shortly after the birth of the parties' first child, appellant worked part time for Northwestern Bell for a short period. However, she was diagnosed with bipolar (manic) depression and since approximately that time has not worked outside the home. Her numerous bouts with her illness have hampered her ability to function as a wife and mother. On several occasions her condition has resulted in her hospitalization, once for three-and-one-half weeks. For her illness, appellant has undergone shock treatment and is presently on medication.

At trial both parties' expert witnesses indicated that appellant's condition requires counseling for her to re-enter the workplace. The experts agreed that with counseling appellant could return to a job at approximately entry level earning capacity. However, while indicating that such employment would be good for her, the experts concluded that appellant would not be able to support herself at more than a subsistence level. The trial court, noting that appellant's condition was long standing, adopted these observations as findings.

pointment pursuant to Minn. Const. art. 6, § 2.

In 1974, via a "straw conveyance" through his attorney, respondent transferred his interest in the house to himself and appellant as joint tenants. At trial he testified that both parties agreed on the transfer and that, at the time, he wanted appellant to have an interest in the property. He indicated that he thought "it was something that should be taken care of for [appellant's] benefit."

In May 1978, respondent was promoted to Executive Vice President of H & B. In subsequent years, he either has or has not received a bonus in addition to his salary depending on the company's profitability. Over the last seven years respondent has received six annual bonuses ranging from $0 to $60,000, averaging about $30,000 or about 30% of his annual income. At trial, however, H & B's Treasurer/Financial Vice President testified that there would be no bonus for 1987. He explained that this was a result of a slumping construction industry which was not ordering many elevators. He further testified that because the downturn in the construction industry was projected to have an extended duration, that H & B's immediate economic future "did not look very good." The trial court found that future bonus payments were too speculative for the court to assume the payment of a bonus in any future year.

In the original findings and conclusions, appellant was awarded permanent spousal maintenance of $2,000 per month and child support of $1,000 per month but was not awarded any of respondent's future bonus income. The homestead was awarded as marital property because the trial court found respondent had failed to prove that he had a nonmarital interest in the house. Both parties moved for amended findings, wherein the trial court awarded to respondent a $30,855 nonmarital interest in the homestead pursuant to *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981). The spousal maintenance award was not modified.

Appellant appeals issues involving both respondent's potential future bonus income, and the marital/nonmarital nature of the homestead.

## ISSUES

1. Did the trial court err in failing to award appellant fifty percent of respondent's potential future bonus income?

2. Did the trial court err in concluding that the homestead was partially respondent's nonmarital property?

## ANALYSIS

### I.

Appellant argues that the trial court abused its discretion by failing to include in her maintenance award half of respondent's future bonus income.

In dissolution actions, "the district court is given broad discretion regarding * * * spousal maintenance." *Taylor v. Taylor*, 329 N.W.2d 795, 797 (Minn.1983) and "[r]elated findings of fact must be upheld unless clearly erroneous." *Kottke v. Kottke*, 353 N.W.2d 633, 635 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Dec. 20, 1984). A trial court's determination is "clearly erroneous" when it is against the logic and facts on the record. *See Rutten v. Rutten*, 347 N.W.2d 47 (Minn.1984). Lastly, when a trial court sets a party's maintenance obligation, "[b]onuses which provide a dependable source of income may properly be included in calculation of future income." *Lynch v. Lynch*, 411 N.W.2d 263, 266 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Oct. 30, 1987).

Appellant argues that because maintenance is defined as "payments from the future income," Minn.Stat. § 518.54, subd. 3 (1986), she was erroneously precluded from deriving maintenance from respondent's future bonus income. We disagree.

The trial court specifically found:

In past years, [respondent] has received bonuses but there is no assurance of a bonus in any given year. He will receive no bonus for 1987 payable in 1988. The prospects for future bonuses are too speculative and the Court cannot assume

the payment of a bonus in any future year.

This is consistent with the testimony of the corporate Treasurer/Financial Vice President who described the problems of the construction industry and concluded that H & B's short term future "did not look very good."

■ Appellant also argues that because the parties' standard of living during the marriage was partially based upon respondent's bonuses, depriving her of maintenance from those bonuses will inequitably decrease her standard of living. This argument implies that the trial court did not properly consider the parties' marital standard of living in setting the amount of respondent's permanent maintenance obligation. We disagree.

The trial court's findings regarding the parties' home in the suburbs, their cabin and boat, and respondent's income all indirectly indicate the trial court was familiar with the parties' pre-dissolution standard of living. Additionally, the trial court made a separate finding in which it specifically determined that appellant enjoyed a "comfortable middle class, but not luxurious standard of living during the marriage." That finding went on to further describe the standard of living. The trial court's detailed findings demonstrate sufficient familiarity with the parties' marital standard of living to set an appropriate maintenance level.

■ Lastly, appellant argues that a present failure to "equitably apportion future bonus income will result in future unfairness to [her]." We disagree. Initially, this assertion of potential future unfairness is not supported by case law. To further her request for present division of respondent's future bonuses, appellant analogizes her situation to that presented in *Doherty v. Doherty*, 388 N.W.2d 1 (Minn.Ct.App.1986), where the trial court awarded the wife permanent monthly maintenance of $500 plus 50% of husband's income in excess of $14,000. Appellant argues that her request for a base maintenance amount plus a percentage of future bonuses is similar and therefore should be

granted. In *Doherty*, however, this court expressed reservations about the fact that this form of "base-plus-a-percent" award requires the parties to maintain contact both with each other and with the court. We stated:

this type of award, which may require the trial court to annually review a party's earnings, creates added expense and litigation for the parties concerned and is not the most judicially efficient approach to such problems.

*Doherty*, 388 N.W.2d at 2 n. 1. Also, *Doherty* is further distinguishable inasmuch as the award there was structured as a "base-plus-a-percent" because the husband had not been employed in good faith prior to trial and his monthly income was found to be artificially low. No finding of bad faith or artificially low earnings requiring the judicially less desirable alternative appellant requests is present here.

We also note that in *Haasken v. Haasken*, 396 N.W.2d 253 (Minn.Ct.App.1986), this court determined that the trial court was not clearly erroneous in concluding that husband's bonuses did not constitute income for purposes of determining child support obligations where payment of future bonuses depended on profitability of husband's employer. *Id.* at 261.

Further, the unfairness asserted by appellant is also inconsistent with the trial court's uncontested findings that appellant's monthly financial needs for herself and the minor child were $3,000 (not including taxes). It then awarded her monthly child support of $1,000 and monthly maintenance of $2,000. Given the trial court's findings and the agreement of both parties' experts regarding the appellant's employability, we do not find this award an abuse of discretion.

Finally, appellant's argument generally does not consider the possibility of modification of a maintenance award under Minn. Stat. § 518.64, subd. 2 (1986). Here, the trial court specifically stated that it would reconsider the maintenance issue if the parties' circumstances changed. To the extent the future unfairness urged by appellant is realized, modification of respondent's main-

tenance obligation under the statute may be sought.

## II.

The parties disagree regarding their relative interests in the homestead. Respondent argues *Schmitz v. Schmitz,* 309 N.W.2d 748 (Minn.1981) is controlling. Appellant alleges respondent's gift to her transmuted his nonmarital property into marital property.

On appeal:

Although a trial court has broad discretion with respect to the division of property * * * and its decision will be overturned only upon an abuse of discretion, * * * the characterization of a type of property as marital or nonmarital is a question of law upon which an appellate court may exercise independent judgment.

*Roel v. Roel,* 406 N.W.2d 619, 622 (Minn.Ct. App.1987) (citations omitted). Also, although "merely transferring title from individual ownership to joint tenancy does not transform non-marital property into marital property," *Montgomery v. Montgomery,* 358 N.W.2d 169, 172 (Minn.Ct. App.1984), here more than a mere legal transference took place.

Generally, a valid gift requires:
1. donative intent;
2. delivery for the gift; and
3. absolute disposition of the property.

Additionally, the party asserting that there was a gift must prove the requisite elements by clear and convincing evidence. *See Cooke v. Belzer,* 413 N.W.2d 623, 626 (Minn.Ct.App.1987) (citing *Oehler v. Falstrom,* 273 Minn. 453, 456–57, 142 N.W.2d 581, 585 (1966), *aff'd. after remand* 281 Minn. 561, 160 N.W.2d 403 (1968)). Lastly, "[q]uestions of intent are questions of fact." *Oehler* at 457, 142 N.W.2d at 585.

The only element of the gift analysis respondent contests is whether he had the requisite donative intent to make a valid gift. The trial court's amended findings stated:

By conduit deed through his attorney [respondent] granted all of his right, title and interest in and to the homestead to himself and [appellant] as joint tenants.

The value of husband's non-marital interest in the homestead is $30,855.00.

The first paragraph of this finding is consistent with respondent's uncontradicted testimony that, at the time of the "straw conveyance," respondent wanted appellant to have an ownership interest in the property, that he thought such an interest "was something that should be taken care of for [appellant's] benefit," and that as a result of appellant's status as a joint tenant "[s]he would own the house equally with [himself]." Such testimony clearly indicates that respondent intended that he and appellant both have an interest in the homestead. The trial court's finding correctly recognized this. However, the trial court then applied the *Schmitz* formula to award respondent a nonmarital interest in the home. This was inconsistent both with respondent's testimony and with the court's own finding. Such an application of *Schmitz* and the resulting award of part of the homestead to respondent as nonmarital property are inappropriate and therefore must be reversed.

Respondent alleges that the facts of *Schmitz* are essentially the same as here except that here a "straw conveyance" was utilized rather than an original purchase as in *Schmitz.* We disagree. In *Schmitz,* the supreme court concluded that the homestead had both marital and nonmarital aspects. *Schmitz,* 309 N.W.2d at 749–50. Here, while the property originated as respondent's nonmarital property, respondent, by his own testimony, affirmatively acted to convey an interest therein to appellant. This action by respondent, combined with the record's lack of indicia that the parties maintained their separate financial identities as in *Schmitz,* distinguishes *Schmitz* from the instant case.

In view of our disposition of these issues, we need not address appellant's argument regarding invasion of the nonmarital homestead equity to avoid unfair hardship to her.

## DECISION

The trial court did not abuse its discretion in refusing to consider respondent's bonus when determining respondent's maintenance obligations. However, the trial court inappropriately awarded respondent a nonmarital interest in the homestead. Therefore, we affirm in part, reverse in part and remand for reinstatement of the original decree provision regarding award of the homestead.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.