*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-0771

In re the Marriage of:

James Walter Shaw, petitioner,
Respondent,

vs.

Barbara Ann Shaw,
Appellant.

**Filed April 11, 2016**
**Reversed and remanded**
**Rodenberg, Judge**

Anoka County District Court
File No. 02-FA-13-193

James Walter Shaw, White Bear Lake, Minnesota (pro se respondent)

Tifanne E.E. Wolter, Mundahl Law, PLLC, Maple Grove, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Larkin, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**RODENBERG**, Judge

On appeal from an amended judgment and decree of dissolution, appellant-wife argues that the district court erred by: (1) awarding the parties joint legal and joint physical custody of the two minor children; (2) ordering a parenting-time schedule that separates the minor children; (3) improperly calculating husband's child-support

obligation; (4) modifying husband's medical-support obligation to reflect his new insurance premiums in the absence of a motion for modification; (5) improperly calculating the amount and duration of wife's spousal-maintenance award; (6) denying wife's claim of a nonmarital interest in the marital homestead; (7) improperly valuing and allocating the parties' marital assets; (8) forgiving husband's spousal-maintenance and child-support arrears sua sponte; (9) characterizing assets that wife used for living expenses as spousal-maintenance payments; and (10) denying wife's request for need-based attorney's fees. Because the district court's findings concerning child custody, parenting time, spousal maintenance, property division, and attorney fees are not supported by the record, and because the resolution of other issues is contingent on those erroneous determinations, we reverse the amended judgment and decree of dissolution, except insofar as it dissolves the marriage, and remand for further proceedings.

## DECISION

Appellant raises a number of issues on appeal, many of which are interrelated. Reversal on some issues affects other parts of the amended judgment and decree. Consequently, we only address those issues necessary to our decision.

## I.     Custody

A district court's primary objective in custody matters is determining the best interests of the child. Minn. Stat. § 518.17, subd. 1 (2014).[1]  A district court must

---

[1] Minn. Stat. § 518.17 (2014) was substantially amended by 2015 Minn. Laws ch. 30, art. 1, §§ 3-5. The district court decided this case under the earlier version of the statute. Because the language of the statute does not contain clear evidence of retroactive intent, the amendments are not relevant to this appeal. *See* Minn. Stat. § 645.21 (2014) ("No law shall be construed to be retroactive unless clearly and manifestly so intended by the

2

consider "all relevant factors," including 13 statutory factors relevant to a child's best interests. *Id.* "Appellate review of custody determinations is limited to whether the [district] court abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985). We apply a clear-error standard of review to a district court's findings of fact related to custody. *Vangness v. Vangness*, 607 N.W.2d 468, 472 (Minn. App. 2000). We defer to a district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

Wife argues that the district court erred by weighing one of the best-interest factors to the exclusion of the six factors that the district court found to favor wife and six factors that were neutral. She argues that the district court's award of joint legal and joint physical custody is therefore erroneous. Wife also argues that the district court erred in rejecting the custody evaluator's (CE's) recommendations without making specific findings.

### A. *Ability of Each Party to Support the Children's Relationship with the Other*

The district court concluded that one best-interest factor, the disposition of each parent to support the children's relationship with the other parent, strongly favored husband. It supported this conclusion with a finding that "[t]he [CE] found that [wife] engages in significant gate-keeping activities with respect to access to the children that can severely rupture the parent-child bond between [husband] and the minor children."

---

legislature."); *K.E. v. Hoffman*, 452 N.W.2d 509, 512 (Minn. App. 1990) (holding that statute applicable to "all cases pending" had retroactive effect and applied to case on appeal, as a "pending" action), *review denied* (Minn. May 7, 1990).

This finding is clearly erroneous. The CE's December 2013 report recommended a "very detailed and structured parenting plan" because wife "tends to want to be a 'Gatekeeper' for the children and direct all their activities and treat [husband] like he is incompetent to care for them" while husband "often times plays into this dynamic by complaining about not having parenting time to great lengths but then turns down parenting time opportunities." The CE's report indicates that wife felt "the need to be in charge of the children" because of her concern about husband's past conduct and the impact of that conduct on his ability to care for the children. The CE based her opinion on wife's actions during the first five months of the parties' separation, before they implemented a parenting plan in March 2013.[2] There is no record evidence supporting the district court's finding that wife engaged in "significant" gate-keeping activities as of the July 2014 trial date, over one year after the parties agreed to a detailed parenting plan.

All of the other statutory factors either favored an award of physical custody to wife or were neutral. Because no other statutory factors support an award of physical custody to husband, the district court's custody award must be reversed.

### B. Joint-Custody Factors and Award

Although the district court's application of Minn. Stat. § 518.17, subd. 1, is erroneous, requiring reversal and remand, we nevertheless review the district court's analysis of subdivision 2 of the statute concerning joint custody to assist the district court on remand.

---

[2] Wife appears to allege that the CE was biased because husband paid the CE for her testimony and wife did not. However, the district court found the CE's report and testimony credible, and we defer to the district court's credibility determinations. *See Sefkow*, 427 N.W.2d at 210 (applying deference to expert evidence).

Under Minn. Stat. § 518.17, subd. 2(b) (2014), the district court must analyze the joint-custody factors if either party or the court contemplates or seeks joint legal or joint physical custody. These factors are: (1) the parents' ability to cooperate in rearing their child; (2) methods for resolving parenting disputes and the parties' willingness to use them; (3) whether it would be detrimental to the child to give one parent sole authority; and (4) whether domestic abuse, as defined under Minn. Stat. § 518B.01 (2014), has occurred between the parents. *Id.* "The court shall use a rebuttable presumption that upon request of either or both parties, joint legal custody is in the best interests of the child." *Id.* "There is neither a statutory presumption disfavoring joint physical custody, nor is there a preference against joint physical custody if the district court finds that it is in the best interest of the child and the four joint custody factors support such a determination." *Schallinger v. Schallinger*, 699 N.W.2d 15, 19 (Minn. App. 2005), *review denied* (Minn. Sept. 28, 2005).

The district court recited that husband "requested an award of joint legal and physical custody." This is wrong. Each party requested sole legal and sole physical custody of both children. In fact, husband expressly preferred that wife be awarded sole custody of the children if he were not awarded sole custody because he "had a hard time envisioning how" a joint custody arrangement could work. Therefore, the rebuttable presumption that joint legal custody is in the children's best interests does not apply. Minn. Stat. § 518.17, subd. 2. The CE's report recommended that the parties share legal custody, but also recommended that wife have sole physical custody and that wife's home be the primary residence for the children. The district court adopted none of the

5

parties' proposals, and instead awarded the parties joint legal and joint physical custody. In this, the district court erred.

*Ability of the parties to cooperate*

In concluding that this factor weighed in favor of awarding joint legal and joint physical custody, the district court found that while the parties "*currently* do not have the disposition to work together and be in frequent contact. . . . [Husband] strongly wishes to cooperate and avoid conflict." The district court based this finding on its determination that husband's willingness to relinquish custodial rights to avoid conflict suggested that the parties would "inevitably move into a less combative relationship, [and] with outside assistance, the parties will be able to cooperate in the rearing of their children." But the district court did not adequately explain how the parents' agreement that joint custody would not be workable because they cannot cooperate is evidence that their level of cooperation warrants shared legal or physical custody.

At the hearing on post-trial motions, the district court itself acknowledged:

> The [parties] clearly hate each other. [The parties] can't resolve even the slightest simplest issues . . . this divorce was one of the most hotly contested dysfunctional proceedings I've held in 15 years. With very little ability to do anything with each other. . . . I'm profoundly disappointed at the absolute lack of cooperation between both of [the parties] . . . what is scary is you're so engrained in your anger and frustrations and your bitterness and your hatred for each other, you don't see what you are doing to those children.

The district court warned the parties that their level of dysfunction was harming their children, and that it could only "hope" the parties could set aside their issues and act in

the children's best interests. And yet, the district court did not amend its finding on this factor. This is clear error.

*Methods for resolving disputes and willingness to use them*

The district court concluded that the parties' expressed "willingness to use the services of a Parenting Time Expeditor to resolve issues that arise in the rearing of the children" makes this factor weigh in favor of awarding joint legal and joint physical custody.

The district court initially appointed a parenting consultant in its September 18, 2014 judgment and decree. However, at the post-trial motion hearing, the district court expressly found that wife had *not* agreed to the appointment of a parenting consultant, and utilized its statutory authority to appoint a PTE instead. Instead of revising its order to reflect the amended findings concerning the appointment, the district court appears to have simply inserted the words "parenting time expeditor" in the place of "parenting consultant." This is clear error.

The parties did not agree to the appointment of a PTE, nor did the CE recommend one. Moreover, and compounding the error, the district court order purports to grant the PTE authority not permitted by statute.

A PTE is authorized "to resolve parenting time disputes by enforcing, interpreting, clarifying, and addressing circumstances not specifically addressed by an existing parenting time order and, if appropriate, to make a determination as to whether the existing parenting time order has been violated." Minn. Stat. § 518.1751, subd. 1b(a) (2014). A "parenting time dispute" means "a disagreement among parties about

7

parenting time with a child," such as "a dispute about an anticipated denial of future scheduled parenting time," "a claim by a parent that the other parent is not spending time with a child," and "a claim by a parent that the other parent is denying or interfering with parenting time." *Id.*, subd. 1b(b). "Appointment of a parenting time expeditor must be conducted following the statutory procedures set out in Minn. Stat. § 518.1751." *Braith v. Fischer*, 632 N.W.2d 716, 718 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001).

The district court authorized the PTE to "resolve all issues related to custody, parenting time, child support, and medical support." But the PTE statute clearly limits a PTE's role to resolving parenting-time disputes; it does not suggest any role for a PTE in custody, child support, or medical support decisions. *See* Minn. Stat. § 518.1751, subd. 1b(a); *cf.* Minn. Stat. § 518.167 (2014) (providing for appointment of custody investigators); Minn. Stat. § 518A.39, subds. 1, 8 (establishing that authority to modify child or medical support remains with the court). The statute prohibits a PTE decision "that is inconsistent with an existing parenting time order." Minn. Stat. § 518.1751, subd. 3(c) (2014). The district court erred by authorizing the PTE to "resolve all issues related to custody, parenting time, child support, and medical support."

The district court's findings concerning this factor, and its legal error in authorizing a PTE to act beyond statutory powers, render its conclusion concerning this factor without legal or factual support.

8

*Detrimental to grant one parent sole authority*

The district court found that the CE's testimony concerning neither parent being the better parent was credible and that "[f]or this reason, the Court finds that it would be detrimental to the children if one parent were to have sole authority over the upbringing of the children." But in *Wopata v. Wopata*, we reversed a joint custody decision after reviewing the statutory custody factors because "the fact that appellant and respondent are equally qualified to raise the children does not mean that they are qualified to raise them jointly." 498 N.W.2d 478, 483 (Minn. App. 1993). The district court clearly erred in its findings concerning this factor.

*Domestic abuse*

The district court determined that domestic abuse was not an issue in this dissolution, a finding not challenged on appeal.

In sum, the district court's factual findings concerning its grant of joint legal and joint physical custody are clearly erroneous, and its resulting legal conclusions are therefore unsupported. We reverse and remand the custody determination for further proceedings as the district court deems appropriate.

## II.    Parenting Time

Wife argues that the district court erred in establishing a parenting-time schedule that separates the children from one another most of the time without making adequate findings to support that determination.

The issue of parenting time is "governed by the best interests of the child." *In re Welfare of B.K.P.*, 662 N.W.2d 913, 916 (Minn. App. 2003). District courts have broad

discretion in deciding parenting-time questions. *Olson v. Olson*, 534 N.W.2d 547, 550 (Minn. 1995). A district court abuses that discretion when it improperly applies the law or makes findings of fact that are not supported by the evidence. *Pikula*, 374 N.W.2d at 710. Minnesota courts have repeatedly recognized that it is "unfortunate" to separate children, and such separations are "carefully scrutinized." *See Schultz v. Schultz*, 266 Minn. 205, 208, 123 N.W.2d 118, 121 (1963) (stating that it was "unfortunate that the children are not living together under one roof with either parent"); *Rinker v. Rinker*, 358 N.W.2d 165, 168 (Minn. App. 1984) (discussing split-custody decisions).

Here, the district court awarded husband parenting time with son every other week beginning on Sundays at 6:00 p.m. Husband was also awarded parenting time with daughter "each and every Wednesday evening" from 5:00 p.m. until 8:00 p.m. and every other weekend from Friday at 5:00 p.m. until Sunday at 6:00 p.m. However, the district court also ordered that "[t]he week [husband] is conducting parenting time with [son] will always be the week opposite the week he is conducting parenting time with [daughter], such [that] in any week [husband] has only one child for parenting time."[3] Therefore, the district court's order only allows the children to spend time together approximately four weekdays during every two-week period.

---

[3] In addition to the other problems with this parenting-time schedule, it may be impossible for the parties to comply with the schedule as ordered by the district court. Husband will have parenting time with daughter on the Wednesday evenings that son is with husband and during his scheduled holidays designated for the children to be with husband. This issue was raised at the post-trial motion hearing, and the district court orally granted husband's motion to strike this paragraph as "meaningless" towards the end of the hearing. However, the district court's written order denies husband's motion to amend the paragraph and leaves it unchanged. Wife does not address this issue on appeal, but we note the problem so that the district court may appropriately address it on remand.

The district court's order does not express why this schedule is in the children's best interests, and it misinterprets both husband's parenting-time proposal and the CE's support of it. Husband's parenting plan proposed that the children would be together for approximately 7.5 out of 14 days until daughter reached the age of three, with the children's time together increasing until the children are on the same schedule when daughter turns five. Wife supported the CE's proposed parenting-time schedule that never separated the children. No record evidence supports a plan where the children see one another only infrequently.

The district court also made no findings regarding the closeness of the relationship between the children. *See* Minn. Stat. § 518.17, subd. 1(a)(5) (listing as a best-interest factor "the interaction and interrelationship of the child with a parent or parents, *siblings*, and any other person who may significantly affect the child's best interests") (emphasis added); *Kennedy v. Kennedy*, 403 N.W.2d 892, 898 (Minn. App. 1987) (noting that the district court has "expressly considered the bonding among the children . . ."); *see also Rinker*, 358 N.W.2d at 168-69 (reversing because the district court failed to make findings indicating that it "consider[ed] and evaluate[d] the 'interaction and interrelationship' of the child with his siblings"). The district court's order does not explain why the children should spend so little time together, nor does it explain why it rejected schedules allowing the children to be together far more often than the district court's parenting plan. We therefore reverse the district court's parenting plan and remand for further proceedings.

11

Because we reverse and remand the district court's custody award and parenting time order, the provision of the decree of dissolution concerning child support and medical support must also be vacated because they depend on the custody and parenting-time provisions.

## III.    Asset Valuation

Wife argues that the district reversibly erred in its valuation of husband's business, the parties' bank accounts, and the parties' 2012 property tax refund. Wife also argues that the district court erred in denying her claim of a nonmarital interest in the homestead.

Upon dissolution, "the court shall make a just and equitable division of the marital property of the parties . . . after making findings regarding the division of the property." Minn. Stat. § 518.58, subd. 1 (2014). These findings shall be based on several factors, including the age, health, employability, needs, occupation, and income of each party. *Id.* The court must also "consider the contribution of each in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker." *Id.* A court must value the marital assets at (1) the day of the initially scheduled prehearing settlement conference, (2) the parties' stipulated date, or (3) a date that the court determines if it makes specific findings that another date of valuation is fair and equitable. *Id.*

A district court has broad discretion in dividing property in a marital dissolution case. *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). An appellate court will affirm the district court's "division of property if it had an acceptable basis in fact and principle even though we might have taken a different approach." *Id.* A determination

by the district court must be "against logic and the facts on record before this court will find that the [district] court abused its discretion." *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984). The district court's valuation of an asset is a finding of fact and will "not be set aside unless clearly erroneous on the record as a whole." *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001) (quotation omitted).

Minn. Stat. § 518.58, subd. 1, provides:

> The court shall value marital assets for purposes of division between the parties as of the day of the initially scheduled prehearing settlement conference, unless a different date is agreed upon by the parties, or unless the court makes specific findings that another date of valuation is fair and equitable. If there is a substantial change in value of an asset between the date of valuation and the final distribution, the court may adjust the valuation of that asset as necessary to effect an equitable distribution.

The district court determined that the appropriate valuation date here was the September 2013 pretrial conference. In the dissolution judgment, however, the district court relied, without explanation, on husband's testimony about the value of the business at the time of the July 2014 trial. The district court also failed, without explanation, to use the September 2013 valuation date for the parties' joint TCF checking account, Ameriprise account, ING savings account, and Spire accounts. Although Minn. Stat. § 518.58, subd. 1, permits a district court to use an alternative to the presumptive valuation date "of the initially scheduled prehearing settlement conference" if it finds "another date of valuation is fair and equitable," the district court did not make the requisite finding here. It did not explain its reasoning for using different valuation dates for different assets. Therefore, the district court clearly erred.

13

Wife has additional meritorious arguments concerning the district court's conclusion that she dissipated the above-mentioned account funds and the 2012 property tax refund, and the district court's denial of her claim of a nonmarital homestead interest. Because the district court's other property-division findings are fatally erroneous, we reverse the entirety of the district court's division of marital asserts and remand for further proceedings.

## IV.    Spousal Maintenance

Wife challenges the spousal-maintenance award, arguing that the district court (1) improperly reduced her reasonable monthly living expenses to $3,000, (2) improperly found that husband's monthly living expenses were $3,000, (3) improperly imputed to her potential income of $18 per hour for full-time employment, and (4) abused its discretion by awarding her only $400 per month in temporary spousal maintenance.

Generally, a district court exercises broad discretion in its decisions regarding spousal maintenance. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn. 1982). We review the district court's spousal-maintenance determinations for an abuse of discretion. *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997). An abuse of discretion occurs when the district court's decision is against logic or not supported by the record. *Robert v. Zygmunt*, 652 N.W.2d 537, 544 (Minn. App. 2002), *review denied* (Minn. Dec. 30, 2002). "A district court's determination of income for maintenance purposes is a finding of fact and is not set aside unless clearly erroneous." *Peterka v. Peterka*, 675 N.W.2d 353, 357 (Minn. App. 2004).

A spousal-maintenance award may be either temporary or permanent, depending on what the court considers to be just, and considering the relevant factors. Minn. Stat. § 518.552, subd. 2 (2014). "Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification." *Id.*, subd. 3 (2014). "[T]he [district court] must of necessity 'balance the equities' in the light of facts then existing or in the light of facts that will with reasonable probability exist in the future." *Brugger v. Brugger*, 303 Minn. 488, 491, 229 N.W.2d 131, 134 (1975) (quotation marks omitted).

Factual findings regarding monthly expenses in a spousal-maintenance calculation "must be upheld unless clearly erroneous." *McCulloch v. McCulloch*, 435 N.W.2d 564, 566 (Minn. App. 1989). But "[a] [district] court's calculation of living expenses must be supported by the evidence." *Rask v. Rask*, 445 N.W.2d 849, 854 (Minn. App. 1989). "Because maintenance is awarded to meet need, maintenance depends on a showing of need." *Lyon v. Lyon*, 439 N.W.2d 18, 22 (Minn. 1989); *see also Lee v. Lee*, 775 N.W.2d 631, 642 (Minn. 2009) (stating that the district court awarded wife more maintenance than she reasonably needed to support herself and instructing the district court on remand to make findings that support the current award or to make a different award).

The district court found that (1) wife was currently unable to earn income sufficient to meet her reasonable needs; (2) wife would be capable of earning $18 per hour working full-time based on her 2003 employment in the human resources field; (3) neither party could independently afford to maintain the marital standard of living; (4) wife was currently under-employed by working approximately 12 hours per week for

15

$11.53 per hour while husband's business had declined; (5) in light of wife's need for retraining and daughter's young age, it was appropriate to require husband to pay $400 monthly in temporary rehabilitative spousal maintenance; (6) at wife's age, and with some retraining, she was capable of returning to full-time employment; (7) husband was capable of earning a gross income of $4,556 per month and could meet his reasonable monthly living expenses while paying child support and spousal maintenance.

Several of the district court's findings are clearly erroneous. First, there was no evidence presented concerning wife's ability to earn $18 per hour in full-time employment in three years. Wife testified that she had earned $18 per hour before quitting her employment with an organization for which she had worked for approximately six years until 2003. The district court implicitly determined that she cannot earn $18 per hour now, and provides no explanation for how she will improve her earning capacity in the next three years.

The district court also failed to make any findings regarding husband's *net* income for spousal maintenance purposes. The district court based its award on its calculation of husband's *gross* income. *See Kostelnik v. Kostelnik*, 367 N.W.2d 665, 670 (Minn. App. 1985) ("In order to determine ability to pay, the [district] court must make a determination of the payor spouse's net or take-home pay."), *review denied* (Minn. July 26, 1985).

Wife's claim that the district court erred in determining that her reasonable monthly expenses total $3,000 also has merit. Wife submitted a detailed budget listing her necessary monthly living expenses at the time of trial totaling $5,613.73. The district

16

court found that this amount was too high, because wife had initially claimed that her necessary monthly living expenses were $3,765. The district court determined that the income necessary to sustain the parties' standard of living while they were together in 2012 varied between $3,346 and $5,416 per month, and averaged $4,224 per month. Wife testified that her living expenses at the time of the parties' separation were $3,765 for herself and $364 for the children, for a total of $4,129. The district court's order does not explain how it determined that wife's reasonable monthly living expenses were $3,000.

Similarly, the district court found that husband's reasonable monthly expenses were also $3,000, again based on the parties' marital standard of living. Husband submitted a detailed budget listing his necessary monthly living expenses totaling $3,567 not including his payments on debt. But husband testified that this exhibit was a summary of his living expenses *during the marriage* before he left the marital residence. He testified that his *current* living expenses are only $200 per month for food and housing, approximately $200 per month for cigarettes, and approximately $100 per month for video games. The district court credited husband's testimony that he pays $200 per month towards housing costs while living with his girlfriend. The district court provided no reasoning supporting its determination that husband's current reasonable monthly expenses are $3,000.

Because the district court's spousal maintenance award is based on several erroneous and unsupported findings, we reverse that portion of the judgment as well, and remand for further proceedings.

17

## V.     Need-Based Attorney Fees

Wife argues that the district court should have granted her request for attorney fees.  Wife did not specify at trial whether her request was based on need or on respondent's litigation conduct.  On appeal, she challenges only the district court's denial of need-based attorney fees.

We review an award of attorney fees for a clear abuse of discretion.  *Crosby v. Crosby*, 587 N.W.2d 292, 298 (Minn. App. 1998), *review denied* (Minn. Feb. 18, 1999).  A district court shall award attorney fees in a dissolution proceeding in an amount necessary to enable a party to carry on or contest the proceeding if (1) the fees are necessary for the good faith assertion of the party's rights in the proceeding, (2) the party from whom fees are sought has the means to pay them, and (3) the party to whom fees are awarded does not have means to pay them.  Minn. Stat. § 518.14, subd. 1 (2014).

A district court shall award need-based attorney fees if the statutory conditions are met.  *Holmberg v. Holmberg*, 588 N.W.2d 720, 727 (Minn. 1999).  A conclusory finding on the statutory factors does not adequately support a fee award.  *See In re Marriage of Richards*, 472 N.W.2d 162, 166 (Minn. App. 1991) (remanding attorney-fee issue because court made only "general findings"); *see also Haefele v. Haefele*, 621 N.W.2d 758, 767 (Minn. App. 2001) ("The district court did not make findings sufficient to show what combination of need [supports] the entire award.  This precludes effective review."), *review denied* (Minn. Feb. 21, 2001).  But a lack of specific findings on the statutory factors for a need-based fee award "is not fatal to an award where review of the order 'reasonably implies' that the district court considered the relevant factors and where

the district court 'was familiar with the history of the case' and 'had access to the parties' financial records.'" *Geske v. Marcolina*, 624 N.W.2d 813, 817 (Minn. App. 2001) (quoting *Gully v. Gully*, 599 N.W.2d 814, 825-26 (Minn. 1999).

Wife sought a total award of $15,552.85 in attorney fees. The district court denied her request and determined that "[n]either party has the ability to pay their own fees or contribute to the fees incurred by the other." But, as discussed above concerning spousal maintenance, the district court clearly erred in finding husband's reasonable monthly expenses. The district court's denial of wife's request for attorney fees was based, at least in part, on this error. We therefore reverse and remand for the district court to reconsider wife's claim for need-based fees.

In sum, the district court abused its discretion in awarding the parties joint physical and joint legal custody, awarding a parenting-time schedule that separates the children without sufficient findings to support that such a separation is in the children's best interest, erred in improperly valuing and allocating the parties' assets at different valuation dates, awarding spousal maintenance without sufficient findings, and declining to make sufficient findings concerning wife's request for need-based attorney fees. Based on these errors, the district court's child support award, its modification of medical support, forgiveness of child-support and spousal-maintenance arrears, and characterization of wife's use of certain assets as spousal maintenance are also erroneous. We reverse the amended judgment and decree of dissolution, with the exception of the

19

findings and conclusion relating to dissolution of the marriage relationship, and remand to the district court for further proceedings consistent with this opinion.[4]

**Reversed and remanded.**

---

[4] We note that this case will be remanded to a different district court judge on remand. *See In re Conduct of Pendleton*, 870 N.W.2d 367, 389 (removing from office the district court judge presiding over this matter for conduct unrelated to this case). The district court judge to whom the case is assigned on remand has considerable latitude to revisit all issues with the exception of dissolution of the marriage relationship.