RODENBERG, Judge
Appellant-husband DeWayne Francis Muschik challenges the district court's conclusion that a document that he and respondent-wife Nancy Jo Conner-Muschik signed before they married is not a valid and enforceable antenuptial agreement. Husband also challenges the district court's conclusions that a home jointly owned by the parties is marital property, and that an increase in the value of husband's interest in a business was attributable to his marital effort and is therefore marital property. Finally, husband argues that the district court erred when it awarded wife need-based attorney fees. In a related appeal, wife challenges the district court's determination that she is not entitled to spousal maintenance. We affirm.
FACTS
Husband and wife signed a document purporting to be an antenuptial agreement, dated May 3, 2012. They were married on May 6, 2012. The May 3 document was notarized but not witnessed, despite *219 signature lines on the document for two witnesses for each party. Shortly after their marriage, husband sold his premarital home, title to which had been held by a spousal maintenance trust before the sale. The money received by the trust from the sale was used to purchase a homestead for the parties in Elk River, titled in the names of both parties as joint tenants.
Before and during the marriage, husband owned shares in Precise Metalcraft Inc. (Precise), a family business he started with his first wife. Although his business responsibilities were reduced following his first wife's cancer diagnosis (and subsequent death), husband has continued his involvement with Precise. Husband's three children from his first marriage work for Precise. During the parties' marriage, husband regularly went to work at Precise and received a salary. Wife also received a salary from the business, but she never worked there or contributed money to the business. Over the course of the marriage, the value of husband's interest in Precise increased by $172,921.[1]
On March 10, 2016, husband petitioned to dissolve the marriage. Husband initially indicated that he agreed with wife's position that the May 3, 2012 document signed by the parties was not a valid antenuptial agreement. Later, husband changed his mind and argued that the document is a valid and enforceable antenuptial agreement. The district court determined that the document is not a valid and enforceable antenuptial agreement because it was not witnessed as required by Minn. Stat. § 519.11, subd. 2.[2]
Following trial, the district court concluded that the Elk River homestead is marital property. It concluded that, although nonmarital funds were used to purchase the property, husband had intended to make a gift to wife of an interest in the homestead as marital property. The district court found as persuasive evidence of husband's donative intent that husband arranged for the Elk River home to be purchased by and titled in the name of the parties as joint tenants, whereas a trust had held title to husband's premarital home. The district court credited wife's trial testimony in determining husband's intent.
The district court further found that the increase in the value of husband's equity interest in Precise during this marriage was a result of husband's marital efforts. It expressly assessed the credibility of the trial witnesses in making this determination, and found that husband "had ongoing, active involvement in the operation of" his family business during the parties' marriage.
The district court denied wife's request for spousal maintenance. It found that wife has sufficient property to provide for her reasonable needs and sufficient funds to meet her reasonable monthly living expenses through employment. The district court further found that wife has significant nonmarital assets, that she has beneficial experience in the work force, that there are full-time employment opportunities available to her currently, and that she *220 did not engage in a good-faith effort to find employment during the divorce litigation. It also found that wife "minimally contributed to the parties' marital estate during the marriage," and that her nonmarital assets, which she kept separate from marital assets, had increased in value during the marriage. It noted that wife did not lose earnings or retirement benefits during their marriage. The district court identified two factors that favor an award of maintenance: that wife is 62 years old, an age at which reentering the work force will be "more difficult"; and that husband "has sufficient resources and income to meet his own needs while meeting those of wife." Ultimately, it concluded that wife has sufficient property to provide for her reasonable needs and is not in need of spousal maintenance.
The district court also awarded wife need-based attorney fees. It concluded that wife would need to spend the majority of the marital property awarded to her to purchase a new home and that her remaining liquid assets will be insufficient for her to pay her attorney fees. The district court noted that husband's litigation conduct had greatly increased the time and expense of the litigation.
This appeal followed.
ISSUES
I. Is the unwitnessed document signed by the parties on May 3, 2012, a valid and enforceable antenuptial agreement under Minn. Stat. § 519.11 (2016)?
II. Did the district court err in concluding that husband gifted nonmarital assets to the marital estate because he purchased a residence during the marriage using nonmarital funds, and the newly purchased home was titled in the names of both parties as joint tenants?
III. Did the district court err in finding that the increase in the value of husband's interest in a family business was a result of marital efforts?
IV. Did the district court abuse its discretion by awarding wife need-based attorney fees?
V. Did the district court abuse its discretion by not awarding wife spousal maintenance?
ANALYSIS
I. The document signed by the parties is not a valid and enforceable antenuptial agreement under Minnesota law.
First, we address husband's argument that the district court erred in concluding that the document signed by the parties on May 3, 2012, is not a valid and enforceable antenuptial agreement, and that we should remand for the district court to consider the validity of the agreement under the common-law procedural- and substantive-fairness standards. Husband argues that, because the written agreement here addresses both marital and nonmarital property, Kremer v. Kremer , 912 N.W.2d 617 (Minn. 2018) required the district court to "assess the validity of [it] under common law standards, not the statutory requirements." In other words, husband argues that none of the statutory provisions in section 519.11-including the provisions regarding witnesses and execution-apply to antenuptial agreements addressing marital property. The district court determined that the document does not comply with the requirements of Minn. Stat. § 519.11, subd. 2, because two witnesses did not sign it and, accordingly, concluded that it is not a valid and enforceable antenuptial agreement.
In evaluating the validity of an antenuptial agreement executed after August *221 1, 1979, appellate courts address whether the agreement satisfies Minn. Stat. § 519.11 and associated case law. See Kremer , 912 N.W.2d 617. Statutory interpretation is a question of law that appellate courts review de novo. Caldas v. Affordable Granite & Stone, Inc. , 820 N.W.2d 826, 836 (Minn. 2012). "Antenuptial agreements must be fair, both procedurally and substantively." Kremer , 912 N.W.2d at 621. The common law governs the standard for substantive fairness. Id. at 622. The procedural fairness of antenuptial agreements is governed by both common-law and statutory standards. Id.
Minn. Stat. § 519.11 applies to all antenuptial contracts and settlements executed on or after August 1, 1979. Minn. Stat. § 519.11, subd. 6. Subdivision 1 addresses the procedural fairness of antenuptial agreements, and provides:
A man and woman of legal age may enter into an antenuptial contract or settlement prior to solemnization of marriage which shall be valid and enforceable if (a) there is a full and fair disclosure of the earnings and property of each party, and (b) the parties have had an opportunity to consult with legal counsel of their own choice. An antenuptial contract or settlement made in conformity with this section may determine what rights each party has in the nonmarital property, defined in section 518.003, subdivision 3b, upon dissolution of marriage, legal separation or after its termination by death and may bar each other of all rights in the respective estates not so secured to them by their agreement. This section shall not be construed to make invalid or unenforceable any antenuptial agreement or settlement made and executed in conformity with this section because the agreement or settlement covers or includes marital property, if the agreement or settlement would be valid and enforceable without regard to this section.
Minn. Stat. § 519.11, subd. 1. Subdivision 2, with the heading "[w]riting; execution," further provides, "[a]ntenuptial or postnuptial contracts or settlements shall be in writing, executed in the presence of two witnesses and acknowledged by the parties, executing the same before any officer or person authorized to administer an oath under the laws of this state." Minn. Stat. § 519.11, subd. 2. These subdivisions require that an antenuptial agreement meet the statutory requirements to be valid and enforceable. Siewert v. Siewert , 691 N.W.2d 504, 506-07 (Minn. App. 2005) (holding that a purported antenuptial agreement signed by only one of two required witnesses is not valid), review denied (Minn. May 17, 2005).
In Kremer , the Minnesota Supreme Court interpreted Minn. Stat. § 519.11, subd. 1, to provide a "safe harbor" for provisions of antenuptial agreements distributing nonmarital property. 912 N.W.2d at 624 (affirming our decision in Kremer v. Kremer , 889 N.W.2d 41 (Minn. App. 2017) ).[3]
As noted, subdivision 1 of the statute states that an antenuptial agreement "shall be valid and enforceable if (a) there is a full and fair disclosure of the earnings and property of each party, and (b) the parties have had an opportunity to consult with legal counsel of their own choice." Minn. Stat. § 519.11, subd. 1. Kremer notes that *222 "[a]ntenuptial agreements must be fair both procedurally and substantively[,]" and that "once the statute's two basic conditions are met, provisions of agreements addressing nonmarital property are automatically valid. If the safe harbor does not apply, the common law does." Kremer , 912 N.W.2d at 621, 624. Kremer also states:
We decline to read subdivision 6 to override the common law's applicability to antenuptial agreements executed on or after August 1, 1979. To do so would be inconsistent with the plain language of subdivision 1 and with our presumption that statutes shall not be interpreted to abrogate the common law unless they do so expressly.
Id. at 625 n.4.
Husband argues that, following Kremer , we should apply the common law to evaluate whether the document signed by the parties is a valid and enforceable antenuptial agreement, regardless of the text of Minn. Stat. § 519.11, subd. 2. Kremer requires no such thing. Kremer analyzed the procedural fairness of an antenuptial agreement. Kremer , 912 N.W.2d at 621. Such a procedural-fairness analysis necessarily follows the resolution of the threshold issue of whether a document is a valid and enforceable antenuptial agreement under Minn. Stat. § 519.11, subd. 2. See Siewert , 691 N.W.2d at 507 ("Because of our conclusion that the antenuptial agreement is invalid and unenforceable, we do not reach whether the agreement was substantively or procedurally unfair."). Kremer did not involve the issue of whether the agreement in that case satisfied the statutory formalities of Minn. Stat. § 519.11, subd. 2-the questions in Kremer were (a) how to assess whether an otherwise properly executed antenuptial agreement was fair, and (b) whether the otherwise properly executed antenuptial agreement at issue was, in fact, fair. Kremer , 912 N.W.2d at 621-29. Here, the issue is whether the parties' undisputed failure to execute an agreement that complies with the governing statute's witness requirement is a fatal defect. Kremer is not precedential for our analysis of subdivision 2. See In re Rollins , 738 N.W.2d 798, 802 (Minn. App. 2007) ("[A]ssumptions underlying an opinion that are not the subject of a court's analysis are not precedential on the point that is assumed.").
The plain language of Minn. Stat. § 519.11 defines what is an antenuptial agreement under Minnesota law. Subdivision 1 provides that an antenuptial contract "made and executed in conformity with this section " may govern the distribution of nonmarital property. Minn. Stat. § 519.11, subd. 1 (emphasis added). Subdivision 1 also provides that an agreement is not rendered invalid or unenforceable "because the agreement ... covers or includes marital property, if the agreement would be valid and enforceable without regard to this section." Id. (emphasis added). Subdivision 1's reference to "this section" directs us to the remainder of section 519.11. Subdivision 2 provides that antenuptial contracts "shall be in writing, executed in the presence of two witnesses , and acknowledged by the parties." Minn. Stat. § 519.11, subd. 2 (emphasis added). To be a valid antenuptial agreement, an agreement signed on or after August 1, 1979, must conform to the requirements of subdivision 2. See Minn. Stat. § 519.11, subd. 6.
The document signed by the parties on May 3, 2012, was not signed by two witnesses, as required by Minn. Stat. § 519.11, subd. 2. The district court correctly concluded that the document is not a valid and enforceable antenuptial agreement under Minnesota law.
*223 II. Husband gifted the Elk River homestead to the marital estate.
We next consider husband's argument that the district court erred in determining that the Elk River homestead is part of the marital estate.
"Whether property is marital or nonmarital is a question of law, but a reviewing court must defer to the [district] court's underlying findings of fact." Olsen v. Olsen , 562 N.W.2d 797, 800 (Minn. 1997) (quotation omitted). If a reviewing court is "left with the definite and firm conviction that a mistake has been made," reversal may follow. Id. "That the record might support findings other than those made by the [district] court does not show that the [district] court's findings are defective." Vangsness v. Vangsness , 607 N.W.2d 468, 474 (Minn. App. 2000).
Nonmarital property may become marital property through a valid gift, although "merely transferring title from individual ownership to joint tenancy does not transform non-marital property into marital property." McCulloch v. McCulloch , 435 N.W.2d 564, 568 (Minn. App. 1989) (quotation omitted). For a gift to be valid, there must be donative intent, delivery, and absolute disposition of the property. Id. The party asserting that there is a valid gift must prove those elements by clear and convincing evidence. Id. "Questions of intent are questions of fact." Oehler v. Falstrom , 273 Minn. 453, 142 N.W.2d 581, 585 (1966). "Donative intent is demonstrated by the surrounding circumstances, including the form of the transfer." Olsen , 562 N.W.2d at 800.
The Elk River homestead was purchased during the marriage with proceeds from the sale of husband's premarital home. Husband's challenge on appeal is to the district court's finding that he had the requisite donative intent when he titled the newly purchased property in the names of both parties as joint tenants. Because determining a party's intent involves a factual inquiry, we review for clear error. McCulloch , 435 N.W.2d at 566, 568.
Although the record is sparse concerning any direct evidence of husband's donative intent, the totality of the record supports the district court's finding that husband intended the Elk River homestead to be made part of the marital estate. Wife testified that, at the time the parties purchased the Elk River home, a spousal-maintenance trust held title to the home that husband owned before the marriage. The terms of the spousal-maintenance trust provide that wife would have use of the parties' primary residence upon husband's death, but would have no ownership interest in the house. Wife further testified that husband told her that they "would get [the Elk River] home and that it would be my home. It would be our home. And that is why, when we closed on the house, it was placed in joint tenancy because that would be, then, my home." She further testified that husband told her that her name should appear first on the deed to the house because "it was going to be, in essence, my home but our home."
The district court made credibility findings based on the testimony and other record evidence concerning husband's donative intent, and applied the clear-and-convincing evidence standard, citing Oehler , 142 N.W.2d at 585. It found that wife satisfied that burden. The district court did not base its finding of donative intent solely on how the Elk River property was titled; instead it found donative intent after careful consideration of the particular facts and circumstances of this case. That the record might support different findings does not render them defective.
*224 Vangsness , 607 N.W.2d at 474. The record supports the district court's findings.
III. The increase in the value of husband's interest in Precise was a result of his marital efforts.
Next, we consider husband's argument that the district court erred in concluding that his marital efforts contributed to an increase in the value of husband's interest in Precise and that the increase is marital property.
As discussed above, when reviewing a determination of whether property is marital or nonmarital, we defer to the district court's factual findings. But, "if we are left with the definite and firm conviction that a mistake has been made," we may reverse. Olsen , 562 N.W.2d at 800. A district court's valuation of an item of property is a finding of fact, and it will not be set aside unless it is clearly erroneous, considering the record as a whole. Maurer v. Maurer , 623 N.W.2d 604, 606 (Minn. 2001).
Marital property is real or personal property "acquired by the parties, or either of them ... at any time during the existence of the marriage relation between them." Minn. Stat. § 518.003, subd. 3b (2016). Nonmarital property includes property "acquired before the marriage," id. , subd. 3b(b), and also includes property that "is acquired in exchange for or is the increase in value" of such property, id. , subd. 3b(c). "[T]he increase in the value of nonmarital property attributable to the efforts of one or both spouses during their marriage, like the increase resulting from the application of marital funds, is marital property." Nardini v. Nardini , 414 N.W.2d 184, 192 (Minn. 1987). On the other hand, "an increase in the value of nonmarital property attributable to inflation or to market forces or conditions, retains its nonmarital character." Id. Stated differently, to find that an increase in value of nonmarital property is marital property, the district court must find that the increase in value during the marriage is causally related to marital effort expended by one or both of the spouses during the marriage. Id. at 192-94.
Here, the district court weighed the credibility of the witnesses, discrediting the testimony of husband and his witnesses, to conclude that husband had ongoing, active involvement with Precise during the marriage. It implicitly found a causal connection between husband's involvement with the business and the increase in value. This implicit finding is supported by the record. The district court was presented with testimony that husband regularly went to work every day during this marriage. Husband's business valuation expert testified that "any increase [in equity] was related to market conditions and not the marital efforts of [husband]." However, the expert's report indicated that husband had a defined role and "[a]ssists with technical questions and job quotes." Wife testified that husband stayed in contact with his children concerning the business when they were on vacation and that husband had told her that he wished he could retire but "was concerned that the business would falter." Another witness, who was familiar with husband's business, testified that she had asked husband on one occasion if he was ever going to retire and that husband responded that he could not retire. She further testified that, on another occasion, husband told her that "he couldn't retire due to the fact that his children were not capable of ... running the shop by themselves." The district court credited this testimony.
Based on the overall record, the district court's determination that the increase in *225 value of husband's interest in Precise is marital property is not clearly erroneous.
IV. The district court did not abuse its discretion by awarding wife need-based attorney fees.
Next, we address husband's argument that the district court abused its discretion in awarding wife need-based attorney fees.
Awards of attorney fees are reviewed for abuse of discretion. Gully v. Gully , 599 N.W.2d 814, 825 (Minn. 1999). A district court must award attorney fees and costs
to enable a party to carry on or contest the proceeding, provided it finds:
(1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;
(2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.
Minn. Stat. § 518.14, subd. 1 (2016). The statute further provides that nothing in the section "precludes the court from awarding, in its discretion, additional fees, costs, and disbursements against a party who unreasonably contributes to the length or expense of the proceeding." Id. A district court must indicate to what extent its award is based on need or conduct, because the standards for each are different. Id. ; Geske v. Marcolina , 624 N.W.2d 813, 816 (Minn. App. 2001).
The district court concluded that the marital property it awarded to wife would not be sufficient to purchase a home and cover wife's attorney fees as well. The district court further noted that wife had spent most of her savings in the dissolution litigation and observed that the costs of litigation had been increased by husband's indecision about whether to litigate the validity of the purported antenuptial agreement. The district court stated that it made its award "based on wife's need for an award of fees, in consideration of her inability to sustain the costs of litigation and represent her interests in this proceeding, and, in part, on the basis of husband's varying positions regarding the validity of the unwitnessed Antenuptial Agreement."
The factors analyzed in the district court's order support a need-based award. Although the district court observed that husband's change of heart concerning whether to litigate the validity of the antenuptial agreement increased the cost of the trial, it did not expressly identify any portion of the fee award as a conduct-based award. Neither did the district court find that husband had unreasonably contributed to the expense of the litigation, a finding which would be a prerequisite to a conduct-based fee award. See Minn. Stat. § 518.14, subd. 1. We interpret the district court's award of fees to be purely need-based, coupled with an observation, apparently accurate, that wife's fees were higher than they might have been had she not been required to litigate the issue concerning the May 3, 2012 agreement.
The district court's factual finding that wife lacked the funds to pay for her outstanding attorney fees incurred over the course of these proceedings is supported by the record and is not clearly erroneous. Although the district court did not make explicit findings concerning husband's ability to pay the award, the district court was familiar with husband's financial situation and implicitly found that husband can afford to assist wife with the fees. The record easily supports the implicit finding that husband has sufficient funds to pay *226 the award. See Geske , 624 N.W.2d at 817 ("[A] lack of specific findings on the statutory factors for a need-based fee award under Minn. Stat. § 518.14, subd. 1, is not fatal to an award where review of the order reasonably implies that the district court considered the relevant factors and where the district court was familiar with the history of the case and had access to the parties' financial records." (quotation omitted) ).
On this record, we see no abuse of the district court's discretion in awarding need-based attorney fees to wife.
V. The district court did not abuse its discretion by declining to award wife spousal maintenance.
Wife argues that the district court erred in failing either to award her spousal maintenance or to reserve jurisdiction to award maintenance in the future if husband does not consummate the district court's property division.
We review a district court's resolution of spousal-maintenance claims for abuse of the district court's broad discretion. Curtis v. Curtis , 887 N.W.2d 249, 252 (Minn. 2016). A district court abuses its discretion concerning maintenance if its findings of fact are unsupported by the record or if it improperly applies the law. Dobrin v. Dobrin , 569 N.W.2d 199, 202 (Minn. 1997). Findings of fact concerning spousal maintenance will be upheld unless they are clearly erroneous. Gessner v. Gessner , 487 N.W.2d 921, 923 (Minn. App. 1992).
In a dissolution of marriage proceeding, a district court may award maintenance if it finds that the spouse requesting maintenance:
(a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or
(b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.
Minn. Stat. § 518.552, subd. 1 (2016). In Lyon v. Lyon , the Minnesota Supreme Court noted that the threshold requirement for an award of spousal maintenance is a showing of need. 439 N.W.2d 18, 22 (Minn. 1989).
Once the appropriateness of a maintenance award is established, a district court must consider all relevant factors in determining an amount of the award. Minn. Stat. § 518.552, subd. 2 (2016). These factors include: the financial resources of the party seeking maintenance; the time needed to acquire education or training to find appropriate employment and the probability of finding sufficient employment; the standard of living established during the marriage; the length of absence from employment; the loss of earnings by the spouse seeking maintenance; the age, physical, and emotional condition of the spouse seeking maintenance; the ability of the spouse from whom maintenance is sought to pay the maintenance; and the contribution of each party to the marital property. Id.
Here, the district court concluded that wife has sufficient resources to meet her reasonable needs. See Minn. Stat. § 518.552, subd. 1(a). In reaching its conclusion, the district court adjusted wife's proposed monthly budget downward, noting that the marital property award would *227 permit her to purchase an unencumbered home. As discussed, the district court awarded her need-based attorney fees, based on its determination that wife likely would spend her liquid assets to purchase a home. The district court further determined that wife will have more assets post divorce than she had before the marriage and that she will have sufficient funds to meet her monthly needs through full-time employment.
The record supports the district court's factual findings, and on this record we see no abuse of the district court's broad discretion.
DECISION
The district court properly determined that the document signed by the parties is not a valid and enforceable antenuptial agreement, and acted within its discretion in determining that the Elk River homestead is marital property and that the increase in the value of husband's interest in Precise resulted from his marital efforts. The district court also acted within its discretion in awarding wife need-based attorney fees and in declining to award wife spousal maintenance.
Affirmed.

The dollar amount of the increase in value during this marriage is not challenged on appeal.

The antenuptial-agreement statute has not been amended since 2005. 2005 Minn. Laws 1st Spec. Sess. ch. 7, § 28, at 3088. Absent an amendment of a statute affecting rights of a party that had vested before that amendment, "appellate courts apply the law as it exists at the time they rule on a case." Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs , 617 N.W.2d 566, 575 (Minn. 2000). Therefore, we cite the current version of the statute in this opinion, despite the fact that the parties signed their agreement in 2012.

The parties' briefing on this issue focused on our decision in Kremer , 889 N.W.2d 41. The supreme court decided Kremer , 912 N.W.2d 617, on May 30, 2018. The parties' briefs concerning the purported antenuptial agreement were filed before the supreme court decided Kremer . Husband argues that both opinions support his argument on appeal.